# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 3, 2012

No. 10-10103

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

COREY DEYON DUFFEY, also known as Keyno, also known as Calvin Brown; ANTONYO REECE, also known as Seven; CHARLES RUNNELS, also known as Junior; JARVIS DUPREE ROSS, also known as Dookie, also known as Dapree Dollars, also known as Fifty; TONY R. HEWITT,

Defendants - Appellants

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:08-CR-167-1

Before JOLLY, DEMOSS, and PRADO, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

Corey Duffey, Tony Hewitt, Antonyo Reece, Jarvis Ross, and Charles Runnels devoted their respective talents to the enterprise of robbing banks. They were convicted of multiple counts of armed robbery, attempted robbery, and conspiracy and received prison sentences ranging, respectively, from a minimum of 140 years, to a twenty-nine life sentence imposed on one defendant.

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10103

Although their criminal enterprise enjoyed some success, the enterprise of appealing their convictions is likely of marginal value to them, given the extensive sentences they will have to serve. First, the Appellants argue that there was only one, overarching conspiracy to rob banks and that their multiple conspiracy convictions are duplicative, violating the Double Jeopardy Clause. Second, they argue that their convictions on two counts of attempted bank robbery are not supported by the evidence, because there was no showing of "actual force and violence, or intimidation," which is required to support a conviction under the first paragraph of 18 U.S.C. § 2113(a) and (d).  Because the government did not establish the underlying offense of attempted bank robbery on these two counts, they further argue that the two § 924(c)(1) counts for use of a firearm during the alleged attempted robberies are invalid.  Finally, Hewitt, individually, raises a sentencing issue contending that the presentence report exaggerates his total offense level, which we reject.  For the reasons that follow, we AFFIRM the convictions except for the two attempted robbery and the two concomitant § 924(c)(1) convictions under Counts Three, Four, Eighteen, and Nineteen, which we REVERSE and VACATE.  Given that we vacate these convictions with respect to all Appellants, we VACATE all sentences and REMAND to the district court to re-sentence all defendants in the light of this opinion.

## I.

## A.

From January to June of 2008, Corey Duffey, Tony Hewitt, Antonyo Reece, Jarvis Ross, and Charles Runnels (collectively, "Appellants"), as well as two co-conspirators — Darobie Stenline and Yolanda McDow — constituted a loose confederacy of bandits who, with varying degrees of success, robbed five banks in the Dallas-Fort Worth area.  Four other individuals — referred to as Nitty,

No. 10-10103

T.S., Kenny, and J.T. — participated in one or more of the robberies, but were not indicted for their alleged crimes.

Both Duffey and Hewitt assumed leadership roles of their co-defendants. They would case banks, invite potential partners to join in the crimes, delegate roles and responsibilities to their co-conspirators, and participate in the robberies.

The confederacy made its debut on January 28, 2008 at the Citi Bank in Garland, Texas. Duffey, Hewitt, Ross, Runnels, Stenline, Nitty, and T.S. were the actors in this robbery. Hewitt organized the robbery and gave instructions to the "takeover team" via walkie talkie. The robbers stole a white Oldsmobile (or Buick) sedan for transportation. This enterprise yielded about $5,000. The robbers netted a disappointingly paltry sum, because the bank was too large for the robbers and raiders to control effectively, even with their assortment of guns. Consequently, they planned for a new, smaller undertaking a few days later.

The group launched their second strike on February 1, 2008 at the Comercia Bank in Desoto, Texas. Duffey, Hewitt, Runnels, Stenline, McDow, Nitty, Kenny, and T.S. worked this job and made travel arrangements by stealing a Ford Explorer. This venture netted a handsome $245,000. Stenline, T.S., and Hewitt acted as lookouts, while the other participants, bearing an array of guns, acted as the "takeover team."

At 1:15 p.m. on March 28, 2008, Duffey, Hewitt, Ross, Runnels, Stenline, McDow, Nitty, and J.T. ganged up on the Century Bank in Dallas, Texas, choosing for transportation a stolen white Chevy Suburban on this occasion. Before this operation, Hewitt sent McDow a text message asking whether she "wanted to make some money." Obviously ambitious, McDow put her considerable talents to work for Hewitt by casing the bank and reporting her observations to Hewitt. The robbery was captured on the bank's security cameras, which showed several men wearing masks and armed with handguns

3

No. 10-10103

and a taser. Stenline, Hewitt, and McDow acted as lookouts. As the risk-takers were making their getaway, a dye-pack stowed with the stolen bills exploded, rendering almost all of the money tainted. Recognizing that all business undertakings are not successful, the gang quickly abandoned the tainted funds and the getaway car in a local apartment complex. After this failure, Hewitt met McDow at a drug store and told her that the bandits had not made any money because the money bag had broken. McDow, who testified for the government, was not informed of any future plans to rob a bank that day.

Because the Century Bank robbery failed, Duffey and Hewitt were discouraged, but only temporarily. Indeed, they decided to rob another bank the same day. Hewitt called Stenline at home that afternoon and invited him to join a job in Garland. At 4:00 p.m., the same dye-stained group that victimized the Century Bank, except for McDow and J.T., robbed the State Bank of Texas in Garland. Because the group needed another getaway car, Nitty hoped to reverse their loss with a different colored stolen Suburban — lucky-blue. Stenline and Hewitt acted as lookouts while the others robbed the bank at gunpoint. The robbers took small, but worthwhile profit of about $14,700 from the State Bank of Texas.

On April 24, all five Appellants, along with Stenline and McDow, robbed a Bank of America in Irving, Texas. Both Stenline and McDow agreed to work the robbery that day. The group traveled in the same stolen, lucky-blue Suburban that served them well in the State Bank of Texas job a month earlier. This time, instead of just threatening the bank's employees with guns, the robbers used a taser to stun bank tellers. Hewitt, Stenline, and McDow acted as lookouts for the robbery. This worthwhile venture yielded $84,000. It was, however, the last productive showing of this loosely coordinated gang of bandits.

It was May 15 that FBI agents, on high alert because of the gang's crime spree, observed Stenline and Hewitt near the Bank of America in Fort Worth,

Texas. Based on Hewitt and Stenline's suspicious behavior, the agents believed that the men were casing a bank in the area. The following day, FBI agents once again observed Hewitt, Stenline, McDow, and other suspected bandits in the same area. The bank takeover team, armed with guns, drove to the bank and parked. The team waited for Duffey to give the sign. But, no signal came. Outside the bank, a man seemed to give Duffey a knowing wink, which led Duffey to think the man indicated some knowledge of what was happening. He immediately canceled the robbery. The rest of the group dispersed and returned to Dallas. McDow testified that she "was prepared" but then she got a message from Hewitt "saying it wasn't going to happen, and everybody basically went their separate ways."

On May 21, an FBI surveillance team spotted Duffey, Ross, and Stenline casing the two, different Bank of America locations in Richardson, Texas. FBI agents, in short order, initiated an emergency wiretap. On May 22, information gathered from the wiretap suggested that a robbery was imminent. The robbers abandoned the plan to rob the banks in Richardson, however, because they believed that the "alphabet boys," also known as the FBI, were on to the plan. Stenline testified that the robbery scheme included plans to kidnap a bank manager. At trial, the government introduced a purple notebook in which Duffey had recorded details about the Bank of America branches, including bank employee names, employee vehicle descriptions and license plate numbers, and employee home addresses. When asked at trial why they abandoned the scheme to rob these banks, Stenline said: "I guess the plan didn't come together."

Finally, through telephone intercepts, FBI agents learned that the Appellants, along with Stenline and McDow, were planning a robbery venture at the Regions Bank in Garland, Texas on June 2. On June 1, Duffey followed the usual plan and stole a Suburban — this time, silver in color. FBI agents overheard Duffey saying that he had called for all hands at the ready and the

No. 10-10103

response was full participation, at least by our Appellants, for this particular job. The FBI was also ready. Near the Regions Bank, FBI agents observed Duffey and Ross parking the stolen, silver Suburban. They saw the two men meet with Hewitt and McDow in the bank's parking lot. The co-conspirators, Runnels and Reece, parked behind the stolen Suburban in Runnels's vehicle. Law enforcement officials then moved in to arrest the gathered gang. Stenline and McDow were arrested without incident, but Appellants — all of whom were heavily armed — turned their attention from their crime to flight, at which point the FBI and police turned their attention from arrest to pursuit. The Appellants were ultimately apprehended after high-speed chases, hostage-taking, kidnaping, police stand-offs, and collisions. But in the end, this confederacy of bandits lay down their arms — if not voluntarily — and were given transportation in a government Suburban to their new residence.

### B.

In July and August of 2009, the case was tried before a jury. The jury convicted the Appellants, in various combinations contingent upon their involvement in each particular offense, of nine counts of Conspiracy to Commit Bank Robbery,[2] two counts of Attempted Bank Robbery under 18 U.S.C. § 2113(a) and (d),[3] and five counts of Bank Robbery and Aiding and Abetting.[4] The Appellants were also convicted of multiple 18 U.S.C. § 924(c)(1) firearm charges appurtenant to their violent federal crimes, which carried with them five to

---

[2] Duffey and Hewitt were convicted of nine conspiracy counts, Reece was convicted of three counts, Ross was convicted of eight counts, and Runnels was convicted of seven counts.

[3] All of the Appellants were convicted of both attempted robbery counts under 18 U.S.C. § 2113(a) and (d).

[4] Runnels, Hewitt, and Duffey were convicted of five bank robbery counts, and Reece was convicted of one count. Ross was convicted of four counts.

No. 10-10103

twenty-five year mandatory minimum sentences.[5]  Additionally, Hewitt, Ross, and Runnels were convicted as felons in possession of a firearm; and Ross was convicted of kidnaping. Runnels was also convicted of assaulting a federal officer.

Consequently, the district court sentenced Duffey to 4,253 months (354 years) of imprisonment, Hewitt to 4,260 months (355 years) of imprisonment, Ross to 3,960 months (330 years) of imprisonment, and Recce to 1,680 months (140 years) of imprisonment.   Based upon a violent recidivist enhancement, Runnels was sentenced to twenty-nine life sentences and, should he complete those sentences, to an additional 120 months in prison for being a convicted felon in possession of a firearm.

## II.

Each of the Appellants raise essentially the same arguments:  that the evidence supports only one conspiracy and, thus, the multiple conspiracy counts in the indictment are duplicative, violating the Double Jeopardy Clause; second, that the evidence is insufficient to support their convictions on two counts of attempted bank robbery; and, finally, that the § 924(c)(1) firearm convictions incidental to the two attempted robbery counts are void for want of an underlying offense, that is, the attempted robbery charges.  Hewitt, individually, raises a sentencing issue, contending that the PSR inflates his total offense level, rendering his prison sentence too lengthy.

## III.

We begin our consideration of this appeal by addressing whether the evidence shows only a single conspiracy to commit the multiple bank robberies, as opposed to separate conspiracies for each robbery.  If there is only one conspiracy, the Appellants' sentences would be significantly reduced.

---

[5] Runnels, Hewitt, Duffey were convicted of fourteen § 924(c) counts.  Ross was convicted of thirteen counts, and Reece was convicted of six counts.

No. 10-10103

Courts may look to circumstantial evidence in order to determine the conspiracy's scope. *United States v. Kalish*, 690 F.2d 1144, 1151 (5th Cir.1982), *cert. denied*, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983). Unless the evidence presented at trial establishes separate conspiracies as a matter of law, whether a single conspiracy or multiple conspiracies existed is a question for the jury to determine.[6] *United States v. Elam*, 678 F.2d 1234, 1245 (5th Cir.1982); *United States v. Michel*, 588 F.2d 986 (5th Cir.), *cert. denied*, 444 U.S. 825 (1979). We follow a five-step analysis, commonly referred to as the *"Marable* factors," *United States v. Marable*, 578 F.2d 151, 154 (5th Cir.1978), to ascertain whether the record demonstrates that a criminal venture constitutes one or more conspiracies: (1) the time frame during which the alleged conspiracies occurred; (2) the extent to which the same persons were involved and the nature of their involvements; (3) whether the statutory offenses charged in the indictments were the same; (4) whether the nature and scope of the defendants' activities charged in connection with each alleged conspiracy were repetitive and continuous; and (5) whether the locations where the events alleged as part of each conspiracy took place were the same. *United States v. Atkins*, 834 F.2d 426, 432-33 (1987); *Kalish*, 690 F.2d at 1151-52. No single *Marable* factor is outcome determinative, and the Government bears the burden of proving that separate offenses occurred by a preponderance of the evidence. *United States v. Greer*, 939 F.2d 1076, 1087 n.11 (5th Cir. 1991) (citing *United States v. Levy*, 803 F.2d 1390, 1393-94 (5th Cir.1986)). In evaluating the five factors, the Court must consider the evidence in the light most favorable to the jury's verdict. *Elam*, 678 F.2d at 1247.

---

[6] The jury was not instructed to find whether a single conspiracy or multiple conspiracies exist here. The jury was, however, instructed on nine conspiracy counts, requiring the prosecution to present proof of nine, separate agreements. Presumably, if the prosecution failed to meet this burden, then the jury would not have returned convictions on nine, different conspiracies.

*1. Time Frame.*  The robberies occurred over the course of six months in 2008.  This inquiry is informed not only by the temporal duration of the conspiracy but also whether there was any chronological overlap in the planning of the crimes, i.e. whether two or more conspiracies were planned or conducted during the same time period.  *See Levy*, 803 F.2d at 1394-95; *United States v. Goff*, 847 F.2d 149, 172 (5th Cir. 1988).

Two robberies occurred on March 28, 2008.  The Government presented evidence, however, that the group planned the second robbery only after the first robbery was unsuccessful, because they had not netted sufficient loot.  McDow testified at trial that she only knew of the first robbery that day and was not invited to take part in the second crime.  Additionally, Stenline went home after the first robbery and was not aware that there was going to be a second robbery until after Hewitt called him at home.  Thus, the evidence shows that two separate agreements were reached, hours apart, to rob different banks on the same day; and, consequently, agreements relating to these two robberies did not exist in any overlapping or simultaneous time frame.

Although the Appellants contend that their agreement was a single, six-month-long, conspiracy to rob banks, the Appellants presented no evidence showing that there was an overarching plan connecting one robbery to another.  Furthermore, they presented no evidence supporting the existence of a single, umbrella-agreement, covering their myriad of criminal escapades.  Indeed, the planning and agreement for the respective robberies and attempted robberies appears to have been from day-to-day and bank-to-bank.

*2. Personnel.*  This court has said that "where the membership of two criminal endeavors overlap, a single conspiracy may be found."  *Elam*, 678 F.2d at 1246.  We have also noted that a "mere shuffling of personnel in an otherwise on-going operation with an apparent continuity will not, alone, suffice to create multiple conspiracies."  *United States v. Nichols*, 741 F.2d 767, 772 (5th Cir.

1984). Here, all of the robberies had three men in common: Duffey, Hewitt, and Stenline. Moreover, the evidence suggests that both Hewitt and Duffey had major responsibilities in the planning of the crimes. *See United States v. Therm-All Inc.,* 373 F.3d 625, 637 (5th Cir. 2004) ("A single conspiracy exists where a 'key man' is involved in and directs illegal activities, while various combinations of other participants exert individual efforts toward a common goal.") (quoting *United States v. Richerson*, 833 F.2d 1147, 1154 (5th Cir. 1987)); *see also Richerson*, 833 F.2d at 1154 ("Parties who knowingly participate with core conspirators to achieve a common goal may be members of an overall conspiracy."). Furthermore, although the same people did not participate in each and every bank robbery, there was regular similarity in the group's actors. Thus, because Hewitt and Duffey acted as key men in organizing the crimes and because the band of robbers on each occasion appears to have been drawn from the same general group of outlaws, this consideration indicates a single conspiracy.

*3. Offense Charged.* All nine conspiracy counts relate to the violation of 18 U.S.C. § 2113(a) and (d), which is indicative of a single conspiracy.

*4. Overt Acts.* Although all of the conspiracy counts related to bank robbery, there was no duplicating evidence presented as proof of each crime. *See Kalish*, 690 F.2d at 1152 (requiring that different, non-overlapping acts be presented as evidence of separate conspiracies). Here, separate and distinct evidence supports each conspiracy count. Still further, the evidence shows a separate agreement for each robbery. For instance, Stenline and McDow testified that the agreement to rob a bank would often be made mere days before the intended robbery. Thus, because the evidence presented to prove each conspiracy did not overlap, the absence of a unifying plan weighs in favor of multiple conspiracies.

No. 10-10103

*5. Geography*. The Appellants assert that because all robberies occurred in the Dallas Metroplex, the conspiratorial acts took place in one geographic location. The robberies, however, took place at different banks throughout the Dallas area, with no two banks robbed twice. Our geographic analysis can be guided by a consideration of how the crime at issue is usually committed. Given the episodic nature of the crime of bank robbery, as opposed to other criminal schemes; the sporadic nature of these robberies; and the jury's verdict of multiple conspiracy convictions, we find that each bank served as a separate and distinct location for the purposes of *Marable. Compare United States v. Greer*, 939 F.2d at 1087-88 (holding that when white supremacists committed sporadic hate crimes, blocks away from each other, in a park and in a synagogue, the evidence supported a finding of different locations, which endorsed the existence of multiple conspiracies); *with United States v. Nichols*, 741 F.2d 767, 772 (5th Cir. 1984) (holding that, in the case of a massive, established drug importation scheme, New Orleans and Raceland, Louisiana; Belize; and Colombia were the same geographic location, supporting the existence of one conspiracy).

Applying the *Marable* factors to the instant facts, we conclude that the evidence is sufficient to establish multiple conspiracies. Although the conspiracies had a certain continuity of personnel and a certain similarity in method, the jury's return of multiple conspiracy convictions is supported by the evidence: there were separate and distinct agreements for each robbery; the actual acts in the separate counts of the indictment, both alleged and proved, were different; the geographic locations of the individual crimes were sufficiently distinct, and the timing of the conspiracy was sufficiently long to suggest the existence of separate agreements. Stated differently, although a loose confederacy committed the crimes and the crimes underlying the conspiracies were the same, the evidence relating to the other *Marable* factors is substantial, so as to support the jury's finding of multiple conspiracies.

No. 10-10103

IV.

A.

We come now to the Appellants' challenge to the sufficiency of the evidence relating to their two attempted robbery convictions under the first paragraph of 18 U.S.C. § 2113(a) and (d).[7] Each Appellant was convicted under the same federal statutes for attempted robbery, as they were for armed robbery; that is to say that the crime of attempted bank robbery is enfolded in the same statutory paragraphs as the crime of actual bank robbery, and one subsection can reference another in stating the requirements of a particular crime.

The jury convicted all Appellants of two attempted robbery counts, when the actual robbery plan was abandoned: first, based on their plan to rob the Bank of America in Fort Worth and, second, based on their gathering at the Regions Bank in Garland. At the Bank of America in Fort Worth, the takeover team, armed with guns, drove to the bank and waited in a stolen Suburban for Duffey to initiate the robbery. Duffey called off the plan at the last minute because a bank patron winked at him, leading him to believe that the patron was aware of the impending robbery. The Appellants left the bank parking lot without any incident. There was no attempt to enter the bank or take the bank by force that day.

Similarly, at the Regions Bank in Garland, an FBI surveillance team observed the Appellants parking both a stolen silver Suburban and maroon pick-

---

[7] The Appellants were not indicted under the second paragraph of 18 U.S.C. § 2113(a), nor would the evidence in this case support an indictment against the Appellants under the second paragraph of 2113(a). *See* 18 U.S.C. § 2113(a) ("Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States . . . [s]hall be fined under this title or imprisoned not more than twenty years, or both."). Here, under the counts at issue, the Appellants did not enter or attempt to enter the bank.

No. 10-10103

up truck. After hearing Duffey say that he was ready to rob the bank, the agents moved in to arrest the Appellants. At no point in time during this transaction did the Appellants attempt to take the bank by force, enter the bank, or brandish a firearm.

We start our sufficiency of the evidence analysis by differentiating between the first paragraph of subsection (a) and subsection(d) of the federal bank robbery statute. Whereas 18 U.S.C. § 2113(a)[8] makes bank robbery and attempted bank robbery a federal crime, § 2113(d)[9] relates to armed robbery and serves as an enhancement to the crimes under § 2113(a), when they are accompanied by the use of firearms or an assault.[10]

The Appellants argue that § 2113(d), by its own terms, requires proof of all of the elements of § 2113(a) plus the use of a firearm; and, thus, § 2113(a) is a lesser-included offense of § 2113(d). This is true. Comparing the statutes set out in the margins below, the plain language of the first paragraph of subsection

---

[8]    Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association

          ...
Shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a).

[9]    Whoever, in committing, or in attempting to commit, any offense described in subsections (a) or (b) of this section assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned for not more than twenty-five years or both.

18 U.S.C. § 2113(d).

[10] The punishment for bank robbery is a maximum of twenty years in prison. 18 U.S.C. § 2113(a). The punishment for armed bank robbery is a maximum of twenty-five years in prison. 18 U.S.C. § 2113(d).

13

(a) specifically requires proof of the defendant's actual use of "force and violence" or "intimidation" as an element of attempted robbery; and subsection (d) only applies to defendants who have committed all of the elements of an offense outlined in subsections (a) or (b).  Because the first paragraph of § 2113(a) requires evidence of the use of "force and violence" or "intimidation," charges under § 2113(d), premised upon violations of the first paragraph of subsection (a), *ipso facto* require evidence of the use of "force and violence" or "intimidation." The Appellants further argue that the Government failed to offer any evidence that they acted with "force and violence" or "intimidation," while attempting to rob the Bank of America in Fort Worth and the Regions Bank in Garland.  Thus, the Government's failure to prove all of the statutory elements of the first paragraph of § 2113(a) and (d) renders the Appellant's attempted robbery convictions invalid as a matter of law.  We agree.

To be candid, the Government's counter argument is without the slightest merit.  Essentially, the Government contends that the phrase "in attempting to commit" in § 2113(d) excuses the Government of its burden of proving the elements of the first paragraph of § 2113(a), including the defendants' use of "force and violence" or "intimidation."  The Government advances this argument notwithstanding unanimous precedent to the contrary and the plain language of the statute making it unequivocally clear that an attempt crime under § 2113(d) requires proof of the elements of § 2113(a) or (b).

Indeed, we have previously confirmed that the "natural reading of the text" of the first paragraph of § 2113(a) requires that the evidence show an actual use of "force and violence, or intimidation." *United States v. Bellew*, 369 F.3d 450, 454 (5th Cir. 2004).  Furthermore, the natural language of § 2113(d) enfolds all of the elements of § 2113(a), rendering § 2113(a) a lesser-included offense of § 2113(d). *Burger v. United States*, 454 F.2d 723 (5th Cir. 1972) (per curiam) ("Section 2113(a) is a lesser included offense of Section 2113(d).")

No. 10-10103

(brackets omitted); *see also United States v. Fletcher*, 121 F.3d 187, 193 (5th Cir. 1997) ("[T]he elements of § 2113(d) include all of the elements of § 2113(a), plus the additional element of assault."), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625 (2002)*; United States v. Davila-Nater*, 474 F.2d 270 (5th Cir. 1973); *Rose v. United States*, 448 F.2d 389 (5th Cir. 1971);*United States v. White*, 440 F.2d 978 (5th Cir.), *cert. denied* 404 U.S. 839 (1971). Indeed, the Supreme Court has described § 2113(a) as "the same offense as § 2113(d) without the elements of aggravation." *Green v. United States*, 365 U.S. 301, 303 (1961); *see also Prince v. United States*, 352 U.S. 322, 327, 327 n.6 (1957) (explaining that, in enacting the Bank Robbery Act, "[i]t was manifestly the purpose of Congress to establish lesser offenses," and noting that § 2113(d) is "a special provision for increased punishment for aggravated offenses").

Thus, in order for the Appellants' attempted robbery convictions to survive a sufficiency of the evidence review, the Government must have presented evidence that the Appellants acted with "force and violence, or intimidation" during the incidents at the Bank of America in Fort Worth and the Regions Bank in Garland. *See United States v. Stracener*, 959 F.3d 31, 33 (5th Cir. 1992). The Government, however, does not offer any proof of "force and violence, or intimidation" to support of either attempted robbery count. Instead, it concedes that, "[u]nder *Bellew* [Fifth Circuit case interpreting § 2113(a)][,] . . . the defendants here would likely prevail." Appellee br. at 48. Because the Government acknowledges that the defendants did not act with "force and violence, or intimidation," as required by the first paragraph of 18 U.S.C. § 2113(a) and (d) during the incidents at the Bank of America in Fort Worth and the Regions Bank in Garland, we reverse and vacate both attempted robbery convictions and sentences.

B.

No. 10-10103

We next examine the two, separate § 924(c)(1)[11] charges appurtenant to the two attempted robbery charges. Section 924(c)(1) punishes the use of a firearm in the commission of a federal crime of violence. *Id.* We held in *United States v. Munoz-Fabela* that in order for the Government to convict a defendant under § 924(c)(1), "it is only the fact of the offense . . . that is needed to establish the required predicate." 896 F.2d 908, 911 (5th Cir.), *cert. denied*, 498 U.S. 824 (1990). The Government failed to establish "the fact of the offense" when it failed to establish the elements of attempted robbery were present during the incidents at the Bank of America in Fort Worth and the Regions Bank in Garland. Thus, the § 924(c)(1) charges are not predicated upon behavior that constitutes the predicate federal offense. *See id.* We therefore reverse and vacate the Appellants' two § 924(c)(1) convictions and sentences.

V.

Finally, Hewitt challenges his sentence, asserting that the presentence report overstates his total offense level; and, thus, his sentence is excessive. First, Hewitt challenges the inclusion of multiple conspiracy counts in his sentence. This issue has already been addressed and has no merit.

---

[11] 18 U.S.C. § 924(c)(1)(I) provides:

> "Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years"

No. 10-10103

Second, Hewitt asserts that the presentence report exaggerates his leadership role in the robberies and thereby improperly assigns multiple, four-point enhancements to his sentences. When a sentencing judge, in the exercise of discretion, imposes a sentence "within a properly calculated Guideline range, in our reasonableness review we will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines" and that "it will be rare for a reviewing court to say such a sentence is 'unreasonable.'" *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005). Hewitt fails to provide a factual or legal basis explaining why these enhancements were erroneous; this issue is thus waived. Even if the challenge to the enhancements has not been waived, there is ample evidence that Hewitt took a leadership position in the confederacy of robbers. Thus, we find no merit to Hewitt's challenges to the presentence report.

## VI.

To sum up, we reject the Appellants' assertions (1) that the Government violated the double jeopardy clause by charging multiple conspiracies instead of a single conspiracy, and (2) that the presentence report overstates Hewitt's offense level. We hold, however, that the Government presented insufficient evidence to convict the Appellants on the counts of attempted robbery and the corresponding § 924(c)(1) counts.

Thus, we AFFIRM all of the Appellants' convictions, with the exception of the Appellants' two attempted robbery and two accompanying firearm offenses. We REVERSE and VACATE the convictions of all Appellants on Counts Three, Four, Eighteen, and Nineteen. Accordingly, we REMAND for resentencing  in accordance with this opinion.

> AFFIRMED in part, REVERSED and VACATED in part, and
> REMANDED for resentencing.

17