# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
May 19, 2020

Lyle W. Cayce
Clerk

No. 18-11578

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

GILBERTO GOMEZ,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, STEWART, and ENGELHARDT, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

In 2017, a jury convicted Appellant Gilberto Gomez of drug-trafficking and firearms offenses. His first appeal to this Court resulted in a resentencing proceeding at which his term of imprisonment was reduced by nearly 200 months. Gomez now raises two challenges to his revised sentence. First, he argues that the First Step Act of 2018 invalidated the 25-year mandatory-minimum sentence he received for one of his firearms offenses. Second, he contends that the district court erred by failing to orally pronounce the special conditions of supervised release that it later imposed in his written judgment. Finding no error, we affirm.

No. 18-11578

## I.

On a tip from a confidential informant in November 2015, the Dallas Police Department initiated an undercover investigation of Appellant Gilberto Gomez and his co-defendant Felix Cantu. The investigation revealed evidence that Cantu was selling methamphetamine at Gomez's direction, and that Gomez was distributing other drugs, including cocaine and marijuana, in addition to methamphetamine. A March 2016 search of Gomez's residence turned up large amounts of cash, drug paraphernalia, "bags of marijuana, cocaine, methamphetamine, [and] alprazolam pills," and seven firearms. Gomez was indicted on six offenses: conspiracy to possess with intent to distribute methamphetamine (count one); possession with intent to distribute methamphetamine, cocaine, and marijuana (counts two, four, and seven, respectively); and two counts of possession of a firearm in furtherance of a drug trafficking crime (counts three and five).

The two firearm counts were charged under separate subsections of 18 U.S.C. § 924(c)(1), which prohibits the use, carry, or possession of a firearm in furtherance of a drug trafficking crime or a crime of violence. Count three was charged under § 924(c)(1)(A)(i), which imposes a five-year mandatory-minimum sentence for a first-time offense. Count five was charged under § 924(c)(1)(C)(i), which, at the time, imposed a 25-year mandatory-minimum sentence for any "second or subsequent conviction under this section."[1] Gomez had not been convicted of a weapons offense in any prior prosecution. Instead, the Government used Gomez's simultaneous conviction on count three as the predicate for imposing § 924(c)(1)(C)(i)'s repeat-offender enhancement on count five. At the time, it was common practice to "stack" simultaneous § 924(c)(1) offenses by charging one as a first-time offense and all others as successive. In

---

[1] 18 U.S.C. § 924(c)(1)(C)(i) (2006), *amended by* First Step Act of 2018, Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5221–22.

fact, this approach had been endorsed by the Supreme Court in 1993 when it held that a defendant charged simultaneously with multiple § 924(c)(1) offenses was subject to the enhanced repeat-offender minimum on all but the first count.[2]

Gomez proceeded to trial and was convicted on all counts in March 2017. The district court sentenced him to a total of 652 months' imprisonment. The court also imposed a five-year term of supervised release ("TSR") "subject to the standard conditions provided by the Sentencing Commission as well as the mandatory conditions." However, Gomez's written judgment also included four special conditions of supervised release that had not been mentioned at sentencing or in his presentence investigation report ("PSR").

Gomez appealed, arguing that the district court had sentenced him under the erroneous belief that it could not vary downward on the drug counts despite considering his Guidelines range "excessive." We agreed, and in September 2018 we issued a limited remand for the district court to reconsider Gomez's sentence.[3] On November 26, 2018, the district court resentenced Gomez to the statutory minimum term of 480 months' imprisonment. In addition to reduced terms on the drug charges, this sentence included the mandatory minimum of 60 months on Gomez's first firearm count and a consecutive mandatory-minimum sentence of 300 months on the second. The court also re-imposed a five-year TSR "subject to the same terms and conditions as previously stated" in Gomez's first judgment. Gomez's revised judgment listed the same four special conditions as the original.

Gomez filed this appeal on December 5, 2018, raising two objections to his revised sentence. First, he argues that the First Step Act of 2018 invalidated the 25-year mandatory-minimum sentence he received for the

---

[2] *Deal v. United States*, 508 U.S. 129, 131–33 (1993).
[3] *United States v. Gomez*, 905 F.3d 347 (5th Cir. 2018).

successive firearm violation. Second, Gomez argues that the district court erred by imposing special conditions of supervised release in his written judgment without orally pronouncing them at sentencing.

## II.

## A.

The First Step Act of 2018 (the "Act") was signed into law on December 21, 2018, "introducing a number of criminal justice reforms."[4] Among those reforms, § 403 of the Act amended 18 U.S.C. § 924(c)(1)(C)(i), the provision that imposes a 25-year minimum sentence for repeat firearms offenders, to reduce the severity of "stacked" charges. Before the Act, the 25-year minimum was triggered by any "second or subsequent conviction under this subsection."[5] Now, it is triggered only by a repeat "violation . . . that occurs after a prior conviction under this subsection has become final."[6] In other words, the 25-year repeat-offender minimum no longer applies where a defendant is charged simultaneously with multiple § 924(c)(1) offenses. Now, to trigger the 25-year minimum, the defendant must have been convicted of a § 924(c)(1) offense in a prior, separate prosecution.[7]

Although § 403 of the Act is not retroactive, Gomez urges us to construe it as applying to defendants who, like him, were sentenced before December 21, 2018 but whose cases remained pending on direct appeal on that date.[8]

---

[4] *United States v. Hegwood*, 934 F.3d 414, 416 (5th Cir. 2019).

[5] 18 U.S.C. § 924(c)(1)(C)(i) (2006), *amended by* First Step Act § 403.

[6] First Step Act § 403.

[7] *See United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020).

[8] The parties dispute when Gomez's sentence was "imposed" for purposes of our First Step Act analysis: the date of the original sentencing hearing (June 19, 2017), or the date of the resentencing hearing (November 26, 2018). We need not decide the issue because both dates are prior to the Act's enactment.

Because this is "a question of pure statutory construction," our review is *de novo*.[9]

**B.**

It is undisputed that if Gomez were charged with the same offenses today as he was in 2016, he would not face the enhanced minimum sentence for repeat firearm offenders. Instead, his two weapons counts would each carry a mandatory minimum of five years.[10] While we recognize the grave effect of this infelicitous timing, we find no support in the statute or the case law for applying § 403 retroactively to cases pending on direct appeal on the First Step Act's effective date.

First and most importantly, the Act itself plainly states that § 403 is not retroactive: It applies to an offense committed before its December 21, 2018 effective date only "if a sentence for the offense ha[d] not been imposed as of such date."[11] A sentence is "imposed" when the district court pronounces it, not when the defendant exhausts his appeals.[12] Second, all other circuit courts to consider Gomez's argument—six at the time of this writing—have rejected it, "uniformly support[ing]" our reading of the statute.[13]

---

[9] *United States v. Ahmad*, 101 F.3d 386, 389 (5th Cir. 1996); *see also United States v. Snyder*, 930 F.2d 1090, 1093 (5th Cir. 1991) ("We review de novo questions of statutory construction.").

[10] S*ee Jordan*, 952 F.3d at 171.

[11] § 403(b), 132 Stat. at 5222; *see United States v. Carabali-Diaz*, No. 19-20261, 2020 WL 1861972, at *1 (5th Cir. Apr. 13, 2020) (unpublished) (per curiam).

[12] *Grene v. United States*, 460 F.2d 580, 582 (5th Cir. 1972); *see Jordan*, 952 F.3d at 172; *see also United States v. Gonzalez*, 949 F.3d 30, 42 (1st Cir. 2020) ("A sentence is customarily understood to be imposed either when it is pronounced or entered in the trial court, regardless of subsequent appeals.").

As the Government points out, even if the Act *were* ambiguous about retroactivity, the general federal saving statute would preclude relief. *See* 1 U.S.C. § 109 (providing that "[t]he repeal of any statute shall not have the effect to release or extinguish any penalty . . . incurred under such statute, unless the repealing Act shall so expressly provide . . . ."); *see also Dorsey v. United States*, 567 U.S. 260, 272 (2012) (explaining that "the word 'repeal' applies when a new statute simply diminishes the penalties that the older statute set forth").

[13] *Jordan*, 952 F.3d at 172; *see id.* at 163 ("§ 403 of the First Step Act does not apply retroactively to cases pending on direct appeal when it was enacted."); *United States v. Cruz-*

No. 18-11578

Finally, we see no merit in Gomez's claim that § 403 is "analogous to . . . a clarifying amendment to the United States Sentencing Guidelines," which "may be considered on direct appeal even when [it was] not effective at the time of sentencing."[14] To state the obvious, § 924(c)(1) is a statute, not a Sentencing Guideline, and Gomez cites no authority for extending conventions of Guidelines interpretation to statutes. Instead, he relies on the fact that § 403 is titled "*Clarification* of Section 924(c) of Title 18, United States Code."[15] In his view, the word "clarification" evinces congressional intent to make § 403, like clarifying Guidelines amendments, retroactive to cases on direct appeal. However, it is well established that "the heading of a section cannot limit the plain meaning of the text," which in this case refutes any implication of retroactivity.[16] Despite its title, § 403 did more than clarify existing law; it abrogated Supreme Court precedent that had endorsed the stacking of § 924(c)(1)(C)(i) sentences.[17]

---

*Rivera*, 954 F.3d 410, 412 (1st Cir. 2020) (declining a defendant's invitation to "read [§ 403(b)] to mean the amendment applies to cases (like his) that were pending on direct review, and so were not final, when the Act was passed"); *United States v. Richardson*, 948 F.3d 733, 737 (6th Cir. 2020) (holding that a defendant resentenced before December 21, 2018 "cannot benefit from the First Step Act"); *United States v. Hodge*, 948 F.3d 160, 162 (3d Cir. 2020) (rejecting the argument "that any defendant awaiting resentencing when the First Step Act became law may benefit from the reduced § 924(c) mandatory minimum"); *United States v. Hamilton*, No. 17-10490, 2020 WL 362943, at *2 (9th Cir. Jan. 22, 2020) (unpublished) (per curiam) ("Section 403 of the First Step Act excludes [a case pending on direct appeal] because [the defendant's] sentence has already been 'imposed.'"); *United States v. Garcia*, No. 17-13992, 2019 WL 7503482, at *1 (11th Cir. July 9, 2019) (unpublished) (per curiam) ("[A]lthough [the defendant's] sentence has not yet become final because it has not yet been affirmed on appeal, the date that matters" for purposes of § 403 "is the one on which the district court sentenced him.").

[14] *United States v. Meza*, 250 F. App'x 651, 655 (5th Cir. 2007) (unpublished) (per curiam) (citing *United States v. Anderson*, 5 F.3d 795, 802 (5th Cir. 1993)) ("Amendments to the guidelines and their commentary intended only to clarify, rather than effect substantive changes, may be considered even if not effective at the time of the commission of the offense or at the time of sentencing.").

[15] § 403, 132 Stat. at 5222 (emphasis added).

[16] *Bhd. of R.R. Trainmen v. Balt. & O.R. Co.*, 331 U.S. 519, 528–29 (1947); *see United States v. Johnson*, 632 F.3d 912, 924 (5th Cir. 2011).

[17] *See Richardson*, 948 F.3d 733, 748 (rejecting a similar argument on the ground that the Act "changed the law rather than clarified what the law always meant"); *see also United*

No. 18-11578

For all these reasons, we reject Gomez's reading of the statute and instead join our sister circuits in holding that § 403 of the Act affords no relief to defendants whose cases were pending on direct appeal on the law's December 21, 2018 effective date. The date that matters in the § 403 inquiry is when the district court imposed the defendant's sentence—not when the defendant exhausted his appeals.

## III.

### A.

Gomez next argues that the district court erred by imposing special conditions of supervised release in his written judgment without orally pronouncing them at his resentencing hearing. The district court's obligation to orally pronounce its sentence is grounded in the defendant's right to be present at sentencing, which in turn is derived from the Fifth Amendment's Due Process Clause.[18] We have long recognized that the oral-pronouncement requirement applies to certain conditions of supervised release as well as to custodial sentences.[19] Our notice-based method for determining the appropriate standard of review has also remained consistent. If the defendant had no opportunity to object to the unpronounced conditions in the district court, we review for abuse of discretion;[20] if he had the opportunity but failed to object, plain error review applies.[21]

---

*States v. Meehan*, 798 F. App'x 739, 741 (3d Cir. 2020) (unpublished) (per curiam) ("[B]ecause Congress made clear in § 403(b) that § 403(a) of the First Step Act applies only to defendants who had not been sentenced as of the date of enactment, the use of the term 'clarification' in § 403's heading is not relevant to the retroactivity determination.").

[18] *See United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam).

[19] *See United States v. Bigelow*, 462 F.3d 378, 381 (5th Cir. 2006).

[20] *United States v. Mudd*, 685 F.3d 473, 480 (5th Cir. 2012).

[21] *United States v. Huor*, 852 F.3d 392, 398 (5th Cir. 2017). Under the four-prong framework of plain-error review, a defendant must demonstrate (1) an error that (2) is "clear or obvious" and that (3) "affected [his] substantial rights." *Puckett v. United States*, 556 U.S. 129, 135 (2009). If the first three prongs are satisfied, we may exercise our discretion to correct the error only if it (4) "seriously affects the fairness, integrity or public reputation of

7

Just recently, however, our en banc Court in *United States v. Diggles* established a new framework for determining which conditions of supervised release require oral pronouncement and what counts as notice to the defendant.[22] Formerly, only "special" conditions of supervised release had to be pronounced; all others—including mandatory conditions, standard conditions, and a hybrid category known as "recommended" conditions—were exempt.[23] Although nominally pegged to distinctions drawn by the Sentencing Guidelines, this taxonomy grew complex and confusing over time. *Diggles* replaced it with a simple, statutorily based dividing line: "A sentencing court must pronounce [only] those conditions that are discretionary under 18 U.S.C. § 3583(d)," the statute that governs supervised release.[24] If a condition is *required* by the statute, "making an objection futile, the court need not pronounce it."[25]

*Diggles* also established that the district court's "oral adoption" at sentencing of a document listing proposed supervision conditions satisfies the oral-pronouncement requirement and provides notice to the defendant, such that a failure to object will result in plain-error review on appeal.[26] Although the document orally adopted in *Diggles* was a PSR, the Court noted that any document listing proposed conditions of supervised release will suffice so long as the district court ensures that "the defendant had an opportunity to review it with counsel" and orally adopts it "when the defendant is in court."[27]

---

judicial proceedings." *Id.* (internal alterations omitted) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

[22] No. 18-40521, 2020 WL 2048025, at *8 (5th Cir. Apr. 29, 2020).

[23] *United States v. Torres-Aguilar*, 352 F.3d 934, 938 (5th Cir. 2003).

[24] *Diggles*, 2020 WL 2048025, at *8.

[25] *Id.* at *4.

[26] *Id.* at *8.

[27] *Id.* at *6 n.5.

## B.

The four conditions of supervised release listed as "special" on Gomez's revised judgment require him to participate in (1) domestic-violence and (2) substance-abuse treatment programs, (3) make timely child-support payments, and (4) provide his probation officer with any requested financial information. Applying the new *Diggles* framework, we see that all four of these conditions are discretionary under § 3583(d).[28] Thus, they are all subject to the oral-pronouncement requirement.

The next question is what standard of review governs Gomez's unpreserved oral-pronouncement challenge. The record shows that at Gomez's November 2018 resentencing hearing, the district court orally adopted the special conditions it had listed in Gomez's first written judgment the year before.[29] While we do not know if Gomez had a physical copy of the first judgment before him at the resentencing hearing, it had been in the record for more than a year, giving the defense ample notice of its contents and opportunity to object to the re-imposition of its supervised-release provisions. Furthermore, given his prior appeal from the first written judgment, there is no doubt that Gomez had had an opportunity to review its contents with counsel prior to the November 2018 resentencing.

Thus, we review for plain error, and just as in *Diggles*, we conclude that Gomez's challenge "do[es] not clear even the first of the four plain-error hurdles

---

[28] The statute lists participation in a domestic-violence treatment program as a mandatory supervised-release condition, but only "for a defendant convicted for the first time of a domestic violence crime . . . ." 18 U.S.C. § 3583(d). Because Gomez was not convicted of such a crime, the district court's imposition of a domestic-violence treatment condition was discretionary.

[29] We note that the district court likely *did* violate the oral-pronouncement requirement at Gomez's first sentencing hearing in 2017. Neither Gomez's PSR nor the court itself made any mention of the conditions that later appeared on Gomez's written judgment, depriving him of notice and an opportunity to object. However, this appeal concerns only Gomez's second, 2018 resentencing proceeding, so our analysis is unaffected by any error that might have occurred at the first.

for there was no error at all."[30] The district court "pronounced" Gomez's conditions of supervised release when it stated that his new TSR would be "subject to the same terms and conditions as previously stated" in his first written judgment.[31]

## IV.

For the foregoing reasons, the revised sentence imposed by the district court is affirmed.

---

[30] *Diggles*, 2020 WL 2048025, at *5.

[31] Although the district court did not identify the first written judgment by name, its oral adoption of the "previously stated" conditions leaves little doubt about which document it intended to incorporate. After all, Gomez's first judgment was the only place in the record where the previously imposed special conditions appeared. Moreover, Gomez has not asserted, much less shown, that the conditions at issue were included in his first judgment as the result of a mistake or are substantively inappropriate.