# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 5, 2022

Lyle W. Cayce
Clerk

No. 21-10817

United States of America,

*Plaintiff—Appellee*,

*versus*

Jordan Michael Porter,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:14-CR-270-1

Before Richman, *Chief Judge*, and Wiener and Willett, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:

In this sentencing appeal following a child pornography conviction, Appellant asks us to disturb the district court's revocation judgment, claiming the judge (1) relied on unsworn statements by the prosecutor, and (2) announced conditions of supervised release that conflicted with the written judgment. But the record belies both claims. For one, ample evidence

supported the prosecutor's comments—precluding any legitimate claim of plain error. Second, the record reveals that the challenged discrepancy produced nothing more than ambiguity that is resolved by the district court's clearly expressed intent: reimposition of the original conditions of supervised release. We AFFIRM.

I

Jordan Michael Porter pleaded guilty to receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2). The district court sentenced Porter to 84 months of imprisonment followed by a 10-year term of supervised release. Porter unsuccessfully appealed.[1]

It took less than a year after his release for Porter to violate the terms of supervision. Specifically, Porter possessed unauthorized cellular devices, failed to attend sex offender treatment,[2] failed to report as directed, and viewed pornographic materials. Porter later attended an administrative hearing at which his probation officer (and the supervisory probation officer) "made sure . . . Porter had a clear understanding of all his conditions." Thereafter, Porter's probation officer made an official report to the district court and recommended no formal action.

Two months passed before Porter again found himself in hot water. As before, Porter failed to submit his monthly supervision report or participate in his sex offender treatment. The probation officer also reported that Porter was found in possession of another unauthorized cell phone,

---

[1] Although we dismissed Porter's original appeal as frivolous, we ordered a limited remand for the purpose of correcting a clerical error in the judgment.

[2] Porter's sex offender counselor also reported that "Porter has shown to be disengaged during his group counseling sessions and his participation in . . . treatment is considered poor."

No. 21-10817

which he initially denied but later admitted. Porter surrendered the phone, and the resulting search revealed a variety of unauthorized photographs depicting scantily clad women. It also seemed that Porter erased some of the phone's contents before turning it over. The probation officer directed Porter to schedule a polygraph examination, but Porter never did. Porter's probation officer subsequently reported this behavior to the district court under penalty of perjury and, this time, sought revocation of Porter's supervised release.[3]

Porter pleaded true to the probation officer's reports and asked the court to continue (rather than revoke) his supervision. In support, Porter offered a host of explanations for his noncompliance, expressed a desire to get back into treatment, and voiced understanding that the original conditions of supervised release were mandatory.

The prosecutor was unconvinced. In particular, she explained "[i]t seems to me that from talking to probation he has not taken [the conditions of his supervised release] seriously at all." She also argued that Porter "doesn't want to do it, and he may [say] something different today when he is faced with more prison time," but "he has given little to no effort according to probation." The prosecutor then requested that the court impose a nine-month custodial sentence and return Porter to "supervised release for the entire term or what is remaining of the [original] term of supervised release."

The district court ultimately revoked Porter's supervised release and sentenced him to nine months of imprisonment. In particular, the judge believed revocation was justified by "the record and . . . evidence . . . produced [during the hearing] . . . as well as that set forth in the [probation

---

[3] Shortly thereafter, the probation officer submitted an addendum detailing yet another phone-related violation. But the United States later withdrew this allegation.

3

No. 21-10817

officer's] [p]etition." The judge also commented that he "agree[d] with the government," explaining that he had "looked over things and [concluded] there ha[d] been significant noncompliance." As for the term of imprisonment, the judge made clear that the nine-month sentence was "fair, just, and reasonable" as well as "necessary for deterrence and protection of the public."

The judge then stated—twice—that he was "reimpos[ing] the ten years [of supervised release] that [the court] initially imposed." Rather than stop there, the judge also sought clarification from Porter's probation officer: "[i]s it necessary for the [c]ourt to read all of these conditions or is it sufficient . . . to state that [the court] reimposes the conditions previously imposed?"

Unfortunately, the record does not reflect an answer to this question.[4] But what happened next is still helpful: Porter's probation officer affirmed that (1)"they are the same conditions," and (2) Porter's counsel affirmed that Porter was "familiar with those initial conditions." The judge then turned his focus directly to Porter, asking "do you know what those conditions are? The [c]ourt does not want the case to come back . . . because of some technicality." "I have no problem reading them into the record," the judge went on, "but I want to make certain nothing is going to be said later on that you were not aware of the terms or conditions of your supervision."

---

[4] The transcript indicates that the judge asked an immediate follow-up question: "[a]re not these conditions officially imposed also?" This transcription is obviously incorrect given both the context and subsequent answer from Porter's counsel. The United States suggests that the judge "might have instead asked, '[a]re not these conditions already imposed also?'" But, as explained in detail below, we need not speculate on what was said to resolve this case.

4

No. 21-10817

It appears the judge did not wait for an answer. Instead, "[o]ut of abundance of caution," he read the conditions in an attempt to avoid any "misunderstanding as to what the [c]ourt imposed." The following was among the conditions orally pronounced:

> You must not view or possess any visual depiction as defined by Title 18 United States Code Section 2256(5) including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic—electronic, mechanical or other means of sexually explicit conduct as defined in Title 18 United States Code Section 2256(2).

The written judgment, however, contained the following condition of supervised release, which also appeared in the court's original judgment of conviction:

> The defendant shall neither possess nor have under his control any sexually oriented, or sexually stimulating materials of adults or children. This includes visual, auditory, telephonic, electronic media, email, chat communications, instant messaging, or computer programs. The defendant shall not patronize any place where such material or entertainment is available. The defendant shall not use any sex-related telephone numbers.

> Porter filed a timely notice of appeal.

## II

Porter argues that the district court erred by (1) relying on the prosecutor's unsworn statements to revoke Porter's supervised release, and (2) imposing conditions of supervised release in the written judgment that were more burdensome than those orally pronounced. As explained below, neither argument has merit.

5

No. 21-10817

A

The standard of review governing Porter's first claim is clear-cut. Porter made no objection to the district court's alleged reliance on unsworn statements, which means Porter must now demonstrate plain error. That is, he must identify "(1) an error, (2) that is clear or obvious, and (3) that affects his substantial rights."[5] Only once these conditions are met may we then "exercise discretion to correct the error, . . . if (4) th[at] error seriously affects the fairness, integrity, or public reputation of judicial proceedings."[6]

For at least two reasons, Porter cannot shoulder his burden. First, his claim of error relies principally on *United States v. Foley*, 946 F.3d 681 (5th Cir. 2020). But *Foley* and this case are leagues apart. The district court in *Foley* erred by relying on a revocation petition (to which the appellant did not plead true) that "contain[ed] only bare allegations" and did not "provide any context regarding the underlying facts and circumstances surrounding [either his] arrest or his conduct leading to the arrest."[7] Here, however, the prosecutor's comments were not only corroborated by the detailed, sworn assertions in the revocation petition, but the petition also came with a potpourri of evidence memorializing Porter's repeated noncompliance— ranging from signed notices of program failures to the extraction report that catalogued each unauthorized image found on the unauthorized device. Porter's reliance on *Foley* is misplaced.

---

[5] *See United States v. Rojas-Luna*, 522 F.3d 502, 504 (5th Cir. 2008). *See generally Puckett v. United States*, 556 U.S. 129, 135 (2009).

[6] *Rojas-Luna*, 522 F.3d at 504 (internal quotation marks and citation omitted); *accord Puckett*, 556 U.S. at 135.

[7] 946 F.3d at 687.

No. 21-10817

Second, even were we to assume plain or obvious error, Porter cannot demonstrate any impact upon his substantial rights. This much is evident in his concession that "the court might have found that . . . [Porter] lacked respect for the conditions of supervision even if the [p]rosecutor had not related the views of [p]robation." Even the most cursory review of Porter's revocation petition demonstrates his indifference to the conditions of supervision.[8] Neither can we overlook the fact that Porter *pleaded true* to the allegations in the revocation petition.[9]

B

The standard of review for Porter's second claim is similarly straightforward. We review discrepancies between an oral pronouncement and written judgment for an abuse of discretion when "the defendant had no opportunity to object to the unpronounced conditions," and we review for plain error "if [the defendant] had the opportunity but failed to object."[10]

This case resides in the latter category. Not only did the district court *twice* state that it was "reimpos[ing] the ten years [of supervised release] that [the court] initially imposed," but the judge subsequently asked Porter's

---

[8] Before being discharged from group counseling for non-compliance, for example, Porter was reportedly "disengaged" and his participation was said to be "poor." Porter's probation officer, too, recounted that "interventions to [Porter's] noncompliance have . . . been ineffective" and that "[Porter] is nonresponsive to supervision." The record also reveals that Porter received, and promptly ignored, formal counseling on his conditions of release after the first bevy of reported violations.

[9] *Compare United States v. Hinson*, 429 F.3d 114, 119 (5th Cir. 2005) (observing that "revocation would have been justified based on [the appellant's] admission alone"), *with Foley*, 946 F.3d at 687 (observing that the appellant had not himself corroborated the basis for revocation).

[10] *United States v. Gomez*, 960 F.3d 173, 179 (5th Cir. 2020); *see also, e.g.*, *United States v. Rouland*, 726 F.3d 728, 733–34 (5th Cir. 2013); *United States v. Garza*, 387 F. App'x 462, 463 (5th Cir. 2010) (per curiam).

7

probation officer whether it was "sufficient ... to state that [the court] reimposes the conditions previously imposed" and questioned both Porter and his counsel as to whether Porter was "familiar with those initial conditions."[11] We are therefore confident that Porter did not want for an opportunity to object.[12] Instead, "[h]e didn't take the bait."[13]

This, of course, brings us to the question du jour: did the oral pronouncement conflict with the written judgment? Porter answers in the affirmative, focusing on the no-sexually-explicit-materials condition and ignoring the district court's earlier references to *reimposition* and the "conditions *previously imposed*." The United States, on the other hand, counters with its own brand of cherry-picking—ignoring all but the first, general portion of the pronouncement and arguing there can be no resulting conflict with the written judgment. The correct focus lies in between.

We begin with the obvious: when confronted with a discrepancy between the oral pronouncement and written judgment, the Constitution typically requires that the former prevail.[14] But this case is not typical. Here, the challenged discrepancy grows from an inconsistency *within* the oral pronouncement. This brand of discrepancy yields ambiguity, which is often resolved by looking to the record for the district court's intent.[15] If the record

---

[11] Porter's counsel answered in the affirmative.

[12] *See, e.g.*, *United States v. Diggles*, 957 F.3d 551, 558 (5th Cir. 2020) (en banc) (observing that the "opportunity [to object] exists when the court notifies the defendant at sentencing that conditions are being imposed," and holding that oral adoption of the previously proposed conditions was sufficient).

[13] *See United States v. Hinojosa*, 956 F.3d 331, 334 & n.3 (5th Cir. 2020) (describing lack of objection to conditions of supervised release).

[14] *See Diggles*, 957 F.3d at 557–58.

[15] *See, e.g.*, *United States v. Tanner*, 984 F.3d 454, 456–57 (5th Cir. 2021) (looking to the record to resolve the internal inconsistency, disclaiming conflict).

cannot resolve this ambiguity, however, we will vacate and remand for resentencing—not reformation.[16] This remedial distinction derives from the fact that only *unambiguous* pronouncements "control."[17]

Against this backdrop, two points demonstrate that Porter does not merit relief. First, the record clearly reveals that the district court intended to reimpose *all* of Porter's original terms. The judge (1) stated twice that he was "reimpos[ing] the ten years [of supervised release] that [the court] initially imposed," (2) sought clarification as to whether he could "state that [the court] reimposes the conditions previously imposed," (3) sought and received confirmation that Porter was "familiar with those initial conditions," and (4) punctuated this entire exchange by gratuitously reading the conditions into the record "[o]ut of abundance of caution," hoping to prevent Porter's "case [from] com[ing] back . . . because of some technicality." We cannot imagine clearer evidence of intent. As such, the record erases any ambiguity introduced by the judge's misstatement.

Second, even were we to assume plain or obvious error, the unusual facts of this case belie any impact on Porter's substantial rights. The Constitution compels a pronouncement requirement because imposing an

---

[16] *See, e.g.*, *United States v. Barber*, 865 F.3d 837, 842 (5th Cir. 2017) (vacating and remanding for resentencing because the oral pronouncement was "impermissibly ambiguous"); *United States v. Garcia*, 604 F.3d 186, 191 (5th Cir. 2010) (same, citing unresolvable "ambiguities" within the pronouncement); *United States v. Thompson*, 254 F. App'x 278, 280 (5th Cir. 2007) (per curiam) (same, the written judgment conflicted with the internally inconsistent oral pronouncement); *see also, e.g.*, *United States v. Story*, 439 F.3d 226, 233 (5th Cir. 2006) ("'[T]he interest of judicial economy and fairness to all concerned parties' require that unclear or ambiguous sentences be vacated and remanded for clarification." (citation omitted)).

[17] *See, e.g.*, *United States v. Zepeda*, 329 F. App'x 647, 649 (7th Cir. 2009) ("It is well-established that an oral pronouncement of sentence, if unambiguous, controls over a conflicting written one.").

unexpressed, discretionary condition "is tantamount to sentencing the defendant *in absentia*."[18] Yet Porter was present for the entire pronouncement—as was the case when the district court first sentenced him to identical terms of supervised release—and yet he sat idly by while the judge repeatedly emphasized an intent to *reimpose* the original terms of supervised release. This leaves no room to argue Porter was somehow sentenced *in absentia*.[19]

\*　　\*　　\*

AFFIRMED.

---

[18] *Tanner*, 984 F.3d at 456 (quoting *Diggles*, 957 F.3d at 557).

[19] *See, e.g.*, *United States v. Castillo*, No. 19-10649, 2021 WL 4237553, at \*5 (5th Cir. Sept. 16, 2021) (per curiam) (finding no plain error when the appellant had notice of the reimposed conditions because they were a part of her original sentence, she did not object at the revocation hearing, and she was subject to the same conditions post-revocation); *cf. also, e.g.*, *United States v. Brown*, 855 F. App'x 176, 179 (5th Cir. 2021) (per curiam) (finding no plain error when a special assessment was not orally pronounced at the revocation hearing because, *inter alia*, it was "already . . . imposed as part of the final judgment . . . and need not have been reimposed" upon revocation).