RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0307p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

          *Plaintiff-Appellee,*

    *v.*

ALBERT P. HUGHES,

          *Defendant-Appellant.*

No. 11-1201

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:08-cr-120-1—Robert J. Jonker, District Judge.

Argued: July 31, 2013

Decided and Filed: October 25, 2013

Before: GIBBONS, SUTTON, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** Anthony J. Dick, JONES DAY, Washington, D.C., for Amicus Curiae. Suzanne K. Klein, SCOTT GRAHAM PLLC, Portage, Michigan, for Appellant. Jennifer L. McManus, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Anthony J. Dick, JONES DAY, Washington, D.C., for Amicus Curiae. Scott Graham, SCOTT GRAHAM PLLC, Portage, Michigan, for Appellant. Jennifer L. McManus, Christopher O'Connor, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

_____

## OPINION

_____

KETHLEDGE, Circuit Judge. In 2010, Congress passed the Fair Sentencing Act (FSA), which reduced the statutory penalties for crack-cocaine offenses under 21 U.S.C. § 841. The Supreme Court later held that the Act's reduced penalties applied to pre-Act offenders who were first sentenced after the Act took effect. *See Dorsey v. United*

*States*, 132 S. Ct. 2321 (2012).  Albert Hughes was first sentenced for his § 841 conviction before the FSA's effective date, but—due to a mistaken remand on our part—was resentenced for that offense after that date.  The district court reinstated Hughes's original sentence.  Citing *Dorsey*, Hughes argues that the FSA should have applied retroactively to his resentencing.  But we think the Supreme Court's reasoning in *Dorsey*, fairly read, cuts against Hughes's argument here.  We therefore affirm.

In March 2008,  Hughes's girlfriend called 911 to report that Hughes was physically abusing her.  After the police arrived at her apartment, they found 64 grams of crack cocaine, a loaded 9mm pistol, and a loaded 9mm carbine rifle, among other contraband.  Hughes later pled guilty to federal drug and gun charges.

The district court sentenced Hughes on April 30, 2009.  At that time, Hughes was subject to two mandatory-minimum penalties:  first, a ten-year mandatory-minimum sentence under 21 U.S.C. § 841(b)(1)(A) for possession with intent to distribute more than 50 grams of crack; and second, a five-year mandatory sentence enhancement under 18 U.S.C. § 924(c) for possession of a firearm in furtherance of a drug-trafficking offense.  Accordingly, the district court sentenced Hughes to 121 months' imprisonment on the drug counts and 60 months' on the gun count, for a total of 15 years plus one month in prison.

On appeal, we vacated Hughes's sentence and remanded his case for resentencing "in light of" *United States v. Almany*, 598 F.3d 238 (6th Cir. 2010).  In *Almany*, we held that the § 924(c) enhancement does not apply in cases where the defendant is already subject to another mandatory-minimum sentence of longer than five years—as Hughes was here under § 841(b)(1)(A).  Before the district court could resentence Hughes, however, the Supreme Court invalidated our decision in *Almany*. *See Abbott v. United States*, 131 S. Ct. 18 (2010).  Thus, by the time of Hughes's resentencing, the whole basis for the remand—namely, the "light" provided by our decision in *Almany*—had been extinguished.

The district court resentenced Hughes on January 28, 2011.  Although Hughes acknowledged that *Almany* could no longer support a sentence shorter than the one he

initially received, Hughes argued that another intervening circumstance did: Congress's enactment of the Fair Sentencing Act, which had taken effect four months earlier, on August 3, 2010. Under the FSA, Hughes's mandatory-minimum sentence for his crack offense would have been only five years, rather than ten. But Hughes's argument conflicted with a longstanding federal rule that a crime's penalties are normally those on the books when the crime was committed. The district court also noted that, pursuant to another federal statute, the sentencing guidelines applicable to Hughes's resentencing were the same ones applicable to his initial sentencing. *See* 18 U.S.C. § 3742(g)(1). The court therefore imposed the same 15-year sentence.

Hughes brought this appeal, arguing that the district court should have applied the FSA retroactively to his case. The government initially filed a brief in opposition, arguing at some length that the general rule against retroactive application of federal sentencing statutes applied with full force to Hughes's resentencing. But then the government reversed its position in FSA cases nationwide; and thus it filed a new brief in which it argued we should vacate the district court's judgment and remand Hughes's case for resentencing under the FSA. We appointed Anthony J. Dick, Esq., to argue as an *amicus curiae* in support of the district court's judgment.

We review de novo the district court's decision not to apply the FSA to Hughes's resentencing. *See Cnty. of Oakland v. Fed. Hous. Fin. Agency*, 716 F.3d 935, 939 (6th Cir. 2013). The question presented is whether the FSA applies to a defendant who is resentenced after the FSA's effective date, but who committed his crime and was initially sentenced before that date. The presumptive answer to that question is no. The federal savings statute—codified at 1 U.S.C. § 109—provides that "[t]he repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide[.]" As interpreted by the Supreme Court, "the word 'repeal[,]'" as used in § 109, "applies when a new statute simply diminishes the penalties that the older statute set forth." *Dorsey*, 132 S. Ct. at 2330-31. The FSA is undisputedly such a "repeal." Moreover, for purposes of § 109, "penalties are 'incurred' under the older statute when

an offender becomes subject to them, *i.e.*, commits the underlying conduct that makes the offender liable." *Id.* at 2331. Reading these terms together, then, § 109 sets a default rule that the penalties for a crime are those in place when the defendant commits it. Thus, "we must assume that Congress did *not* intend" for the FSA to apply retroactively in a particular defendant's case "unless [Congress] clearly indicated to the contrary." *Id.* at 2326 (emphasis in original).

The FSA itself does not contain any such clear indication, since Congress elected not to include a retroactivity provision in the Act. Absent some other clear indication that the FSA should apply to Hughes's resentencing, therefore, the Act does not apply.

The parties here (*i.e.*, the government and Hughes) argue that the Supreme Court's decision in *Dorsey* sets forth some clear indications that the FSA should apply to Hughes's resentencing. In *Dorsey*, the defendant sold crack before the FSA's effective date, but—unlike here—was first sentenced after that date. The Court stated that the question whether the FSA applied to Dorsey's sentencing was "difficult in part because relevant language in different statutes argues in opposite directions." *Id.* at 2330. One statute—namely, § 109—pointed like a road sign towards the conclusion that the FSA did not apply to Dorsey's sentencing, because the FSA was not on the books when Dorsey committed his crime. But the Court thought that a provision in the Sentencing Reform Act of 1984 marked out a different path—discernable, perhaps, more by the tracker's art than by simple sign reading, but discernable nonetheless. Specifically, the Court explained, 18 U.S.C. § 3553(a)(4)(A)(ii) "says that when 'determining the particular sentence to be imposed' in an initial sentencing, the [district] court 'shall consider,' among other things, the 'sentencing range' established by the Guidelines that are 'in effect on the date the defendant is sentenced.'" *Dorsey*, 132 S. Ct. at 2332 (quoting § 3553(a)(4)(A)(ii)) (emphasis omitted). Thus, in the Court's view, § 3553(a)(4)(A)(ii) expresses a "background sentencing principle" that, "when the Commission adopts new, lower Guidelines amendments, those amendments become effective to offenders who committed an offense prior to the adoption of the new amendments" but who are initially sentenced thereafter. *Id.* And the Court further

observed that, in the FSA itself, Congress directed the Sentencing Commission to amend the crack-cocaine Guidelines "as soon as practicable" after the FSA's effective date. *Id.* Hence the Court determined that, in Dorsey's case, § 3553(a)(4)(A)(ii) led to the opposite conclusion that § 109 did.

But in Hughes's case these statutes point precisely the same way. For § 3553(a)(4)(A)(ii) contains an exception, inapplicable in *Dorsey* but undisputedly applicable here. Specifically, § 3553(a)(4)(A)(ii) provides that, "*except as provided in section 3742(g)*," the district court should apply the version of the Guidelines in effect at the time of the defendant's initial sentencing. (Emphasis added.) And § 3742(g)—entitled "Sentencing upon remand[,]" which is the kind of sentencing at issue here—provides in relevant part that "[a] district court to which a case is remanded . . . shall apply the guidelines . . . that were in effect *on the date of the previous sentencing* of the defendant prior to the appeal[.]" 18 U.S.C. § 3742(g)(1) (emphasis added). Thus, as interpreted by our court—and by their plain terms—"§§ 3553(a)(4)(A) and 3742(g)(1) together [] express Congress's intent that the district court at resentencing apply the Guidelines that were in effect at the time of the defendant's *original* sentencing." *United States v. Taylor*, 648 F.3d 417, 424 (6th Cir. 2011) (emphasis added).

Unlike Dorsey, who sought to apply the FSA to his initial sentencing, Hughes seeks to apply the FSA to his *re*sentencing. Per the Court's manner of interpretation in *Dorsey*, §§ 3553(a)(4)(A)(ii) and 3742(g)(1) tell us that Hughes cannot do so—that the penalties applicable in his resentencing, instead, are those "that were in effect on the date of [his] previous sentencing[.]" 18 U.S.C. § 3742(g)(1). Section 109 tells us the same thing. In this case, therefore, the "relevant language in different statutes" does not lead us in "opposite directions." *Dorsey*, 132 S. Ct. at 2330. Instead it leads us to the same place: the FSA does not apply to Hughes's resentencing.

What the parties ask us to do in this case, then, is remarkable. The presumption created by § 109 is one that we are bound to take seriously, as the Supreme Court reminded us in *Dorsey*. And in Hughes's case that presumption is not rebutted, but

*confirmed* by the very statute—§ 3553(a)(4)(A)(ii)—that the Court flagged as relevant there.

But the government offers three reasons why it thinks we should disregard that presumption nonetheless. First, the government argues that, taken together, three other statutory provisions—18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and 3661—support retroactive application of the FSA to Hughes's case. Sections 3553(a)(1) and (a)(2)(A) direct the district court to consider "the nature and circumstances of the offense" and "the seriousness of the offense," respectively, when determining a defendant's sentence. Section 3661 provides: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Our court has read these provisions together to allow a district court to consider "postsentencing amendments to the Guidelines" when resentencing a defendant on remand. *Taylor*, 648 F.3d at 425. And from this rule—already once removed from the statutes themselves—the government infers a "sentencing principle" that courts should "consider and effectuate the latest views of Congress and the Sentencing Commission on appropriate punishment." Gov't Br. at 17. This putative "sentencing principle," in the government's view, then "weighs in favor" of retroactive application of the FSA. *Id.*

The argument is more impressionistic than legal. It has little to do with what the statutes actually say, and more to do, apparently, with one's perception of their mood or animating purpose. But statutes are not artistic palettes, from which the court can daub different colors until it obtains a desired effect. Statutes are instead law, which are bounded in a meaningful sense by the words that Congress chose in enacting them. Here, we do not see—and the government does not explain—how, exactly, the directive in § 3553(a) that the district court consider "the nature and circumstances" and "seriousness of the offense" has much to do with the question whether the FSA applies retroactively to Hughes's resentencing. The same is true as to the allowance in § 3661 for unrestricted consideration of a defendant's "background, character, and conduct[.]"

To read these provisions to establish yet another "background sentencing principle" relevant to the FSA's retroactivity—and then to apply that putative principle to overcome the statutory phalanx of §§ 109 and 3553(a)(4)(A)(ii) in this case—would be no longer to take any of these statutes seriously as law. There is a reason why none of these provisions—§§ 3553(a)(1), (a)(2)(A), or 3661—found any mention in *Dorsey*'s exhaustive recitation of the factors relevant to the question whether the FSA has retroactive effect. The reason is that these statutes *qua* statutes are immaterial to that question. We reject this argument.

Second, the government argues that, if we fail to apply the FSA to defendants resentenced after the FSA's effective date, we will create the kind of same-day sentencing disparities that the Court sought to avoid in *Dorsey*. There, the Court said that the imposition of "disparate sentences" by the "same judge" at the "same time" and in the "same place" were "a kind of unfairness that modern sentencing statutes typically seek to combat." 132 S. Ct. at 2333. But this argument too is torpedoed by § 3742(g)(1). The disparities that the Court cited in *Dorsey* were those between *initial* sentencings that occurred on the same day. The disparities here, in contrast, would be between initial sentencings and sentencings "upon remand," 18 U.S.C. § 3742(g)—which is precisely the sort of disparity that Congress expressly prescribed in § 3742(g)(1). This argument therefore provides us no basis to overcome the presumption set forth in § 109.

It is true, of course, that in *Dorsey* the Court sought to avoid "imposing upon the pre-Act offender a pre-Act sentence at a time after Congress had specifically found in the Fair Sentencing Act that such a sentence was unfairly long." 132 S. Ct. at 2333. But the Court's opinion cannot be fairly read to suggest that this point, standing alone, is reason enough to provide the relief that Hughes seeks here. Instead it took "[s]ix considerations, taken together," to overcome the § 109 presumption in *Dorsey*. *Id.* at 2331. As shown above, those considerations do not overcome the § 109 presumption here; to the contrary, the most important of them only confirms it. Moreover, any argument based on this passage would prove too much: if the mere fact that Congress

has chosen to reduce the penalties for an offense were reason enough to apply the new penalties retroactively, § 109 would never apply. We are confident that the Court in *Dorsey* did not mean to repeal § 109 by implication. *See* 132 S. Ct. at 2332 (describing § 109 as an "important background principle of interpretation").

Finally—and perhaps more to the point—the government argues that the FSA's "overriding purpose was to correct an unjust sentencing scheme[,]" and that we ought not perpetuate that scheme by applying it to Hughes's resentencing. Gov't Br. at 17. As judges—as opposed to, say, legislators—we can be sympathetic to this argument without being persuaded by it. For the argument is misdirected as presented to an intermediate court of appeals. Neither policy concerns, nor some general sense of the statute's overriding purpose, nor the spirit of the age, provides us with any lawful basis to do what Hughes asks us to do here. That is not to say it could not have been done: Congress with a few keystrokes could have included a retroactivity provision in the FSA, or the President could have granted clemency (and still can) to Hughes and all other defendants similarly situated to him. *See* U.S. Const. Art. II, § 2, cl. 1. But as judges we are confined to what the law says. We need legal grounds, not just equitable ones, to disregard the § 109 presumption and all that the Supreme Court has said about it. For the reasons shown above, those legal grounds are absent here.

Separately, we reject Hughes's argument that, during his resentencing, the district court failed to consider evidence of Hughes's post-sentence rehabilitation. The transcript of the sentencing hearing instead shows that the court did consider that evidence, but was unpersuaded that the evidence warranted a reduction in Hughes's sentence. *See* Tr. at 15.

The district court's judgment is affirmed.