RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0215p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────



UNITED STATES OF AMERICA,

     *Plaintiff-Appellee*,

 *v.*

TIMOTHY IVORY CARPENTER,

     *Defendant-Appellant*.

No. 22-1198

─────────────────

On Petition for Rehearing En Banc.
United States District Court for the Eastern District of Michigan at Detroit.
No. 2:12-cr-20218-4—Sean F. Cox, District Judge.

Decided and Filed:  September 18, 2023

Before:  GUY, KETHLEDGE, and STRANCH, Circuit Judges.

─────────────────

**COUNSEL**

**ON PETITION FOR REHEARING EN BANC:**  Harold Gurewitz, GUREWITZ & RABEN, PLC, Detroit, Michigan, Jeffrey L. Fisher, O'MELVENY & MYERS LLP, Menlo Park, California, for Appellant.  **ON RESPONSE:**  Andrew C. Noll, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Blake S. Hatlem, Andrew Picek, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

   The court issued an order.  KETHLEDGE, J. (pp. 3–6), delivered a separate opinion, in which SUTTON, C.J., and THAPAR and BUSH, JJ., joined, concurring in the denial of the petition for rehearing en banc.  GRIFFIN, J. (pp. 7–11), delivered a separate opinion, in which MOORE and STRANCH, JJ., joined, dissenting from the denial of the petition for rehearing en banc.  BLOOMEKATZ, J. (pp. 12–14), delivered a separate opinion, in which MOORE, CLAY, GRIFFIN, STRANCH and MATHIS, JJ., joined, dissenting from the denial of the petition for rehearing en banc.

——————————

## ORDER

——————————

The court received a petition for rehearing en banc.  The original panel has reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision.  The petition then was circulated to the full court.[*] Less than a majority of the judges voted in favor of rehearing en banc.

Therefore, the petition is denied.

---

[*]Judge Davis recused herself from participation in this decision.

---

**CONCURRENCE**

---

KETHLEDGE, Circuit Judge, concurring in the denial of rehearing en banc.  Our panel applied binding circuit precedent in this appeal, but I write to explain why I think that precedent (namely *United States v. Jackson*, 995 F.3d 522 (6th Cir. 2021)) was correct.

As an initial matter, we must apply something of a clear-statement rule here.  The federal savings statute—codified at 1 U.S.C. § 109—provides that "[t]he repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing act shall so expressly provide[.]"  The word "repeal[,]" as used in § 109, "applies when a new statute simply diminishes the penalties that [an] older statute set forth."  *Dorsey v. United States*, 567 U.S. 260, 272 (2012).  The First Step Act is plainly such a "repeal."  *Cf. id.*; *see also United States v. Hughes*, 733 F.3d 642, 644 (6th Cir. 2013).  Thus, according to the Supreme Court, "we must assume that Congress did *not* intend" for such a repeal to apply retroactively in a defendant's case "unless [Congress] clearly indicated to the contrary."  *Id.* at 264 (emphasis in original); *see also Hughes*, 733 F.3d at 644.  So the question is whether Congress has clearly indicated that the Act should apply here.

Section 403(b) of the First Step Act provides:  "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment*." (Emphasis added).  The interpretive question is whether that last, restrictive phrase requires the absence of a particular historical fact—namely the imposition of a sentence—or the absence of a sentence with ongoing legal effect.

We usually give the words of statutes their ordinary meaning; and on that score—for all the opinions written on this issue—nobody has come close to dismantling then-Judge Barrett's grammatical exegesis as to why § 403(b) demands the absence of a particular historical fact. *See United States v. Uriate*, 975 F.3d 596, 606-09 (7th Cir. 2020) (Barrett, J., dissenting). Section 403(b) refers not merely to a "sentence" but to the *imposition* of one; and the statute's

use of the verb "imposed[,]" plainly enough, puts the section's "focus on the historical fact" of the sentence's imposition. *Id.* at 607.  That comports with the section's use of the present-perfect tense, which signifies an "act, state, or condition that is now completed or continues up to the present." *The Chicago Manual of Style* ¶ 5.132 (17th ed. 2017).  Here, the sentence's imposition is "now completed."  And the act of imposing a sentence could not possibly "continue up to the present"—because the imposition of a sentence occurs at a fixed point in time, when the district court "state[s] in open court the reasons for its imposition of the particular sentence[.]"  18 U.S.C. § 3553(c).

Moreover—for purposes of precluding the Act's retroactivity as to the sentence for a particular conviction—the imposition of any sentence will do.  For § 403(b) simply asks whether, as of the Act's date of enactment (December 21, 2018), "a" sentence has or "has not been imposed[.]"  First Step Act of 2018, Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5222.  That usage of "a"—which here the government calls the "neutral article," but which everyone else calls the "indefinite article," *see The Chicago Manual of Style* ¶ 5.71—refers to "'a nonspecific object, thing, or person that is not distinguished from the other members of a class.'" *Uriate*, 975 F.3d at 608 (Barrett, J., dissenting) (quoting Garner, *Garner's Modern Legal Usage* 991 (4th ed. 2016)); *see also United States v. Merrell*, 37 F.4th 571, 578 (9th Cir. 2022) (Boggs, J., dissenting) (same).  Thus, "a sentence" as used in § 403(b) means any kind of sentence, not just a valid or non-vacated one; and it does not mean "a valid sentence that survives constitutional challenge on direct appellate review and is therefore not subject to a vacatur and full remand for resentencing." *United States v. Mitchell*, 38 F.4th 382, 386 (3d Cir. 2022).

Hence the ordinary meaning of § 403(b) is straightforward:  it simply asks whether, as of December 21, 2018, a sentence (meaning any sentence) has been imposed on the defendant.  Carpenter's sentence had been imposed as of that date, and indeed had not even been vacated yet.  Thus—even under the reasoning of the Seventh Circuit opinion from which then-Judge Barrett dissented—the First Step Act does not apply to Carpenter's resentencing. *See Uriate*, 975 F.3d at 602 n.3.

The best argument to the contrary is that we should disregard the ordinary meaning of § 403(b) in favor of a technical meaning.  Specifically, a sentence's vacatur typically "wipe[s]

the slate clean" for purposes of resentencing, which means—the reasoning goes—that "'a sentence ha[s] not been imposed' for purposes of § 403(b) at the time of resentencing." *Merrell*, 37 F.4th at 575. Respectfully, however, that reasoning gives technical legal effect to a figure of speech. Expressions like "wipe the slate clean," or that after a sentence's vacatur "the defendant is placed in the same position as if he had never been sentenced," *id.* at 576 (cleaned up), are merely a shorthand for describing a district court's discretion in sentencing a defendant on remand: namely, that the court "generally should be free to consider any matters relevant to sentencing, even those that may not have been raised at the first sentencing hearing[.]" *Id.* (internal quotation marks omitted). Those expressions reflect that a vacated sentence is a sentence without legal effect; but that does not mean the court may proceed as if the earlier sentencing never happened. To the contrary, another statutory provision—entitled "Sentencing upon remand"—provides in relevant part that "[a] district court to which a case is remanded . . . shall apply the guidelines . . . that were in effect *on the date of the previous sentencing* of the defendant prior to the appeal[.]" 18 U.S.C. § 3742(g) (emphasis added); *see also Hughes*, 733 F.3d at 645.

Section 3742(g) references the fact of a defendant's earlier sentencing in the same way that § 403(b) does—namely, as a temporal marker that identifies the substantive rules (guidelines in the case of § 3742(g), mandatory minimums for § 403(b)) that the district court must apply when sentencing a particular defendant. And using the historical fact of a defendant's prior sentencing as such a marker does not amount to giving the vacated sentence itself legal effect. A sentence has legal effect when it restrains a defendant's liberty, not when it marks a particular point in time. *See Merrell*, 37 F.4th at 579 (Boggs, J., dissenting).

Nor is the word "sentence," as used in § 403(b), a term of art that means only a sentence that has not been vacated. That is just another way of saying that a vacated sentence is one that the district court must pretend never happened. Moreover, the Supreme Court has said that courts must not "assume that a statutory word is used as a term of art where that meaning does not fit." *Johnson v. United States*, 559 U.S. 133, 140 (2010). "Ultimately, context determines meaning, and we do not force term-of-art definitions into contexts where they plainly do not fit and produce nonsense." *Id.* (cleaned up). The relevant "context" here is the one governed by

§ 3742(g), namely "[s]entencing upon remand."  And the historical fiction that Carpenter advocates would produce nonsense and incoherence alike.  Nonsense, because under Carpenter's interpretation—as in *Merrell*—a defendant who had been in prison for 20 years pursuant to a later-vacated sentence "is somehow a defendant on whom a sentence has not been imposed as of" the First Step Act's effective date.  *Merrell*, 37 F.4th at 578 (Boggs, J., dissenting). (Meanwhile, a sentence cannot be vacated until it is first "imposed.")  And incoherence because, under Carpenter's interpretation, a district court must recognize the fact of the defendant's prior sentence for purposes of determining his guidelines range (as required by § 3742(g)), but at the same time pretend that sentence never happened for purposes of determining the defendant's mandatory minimum.  This kind of cognitive dissonance is hardly the "clear indication" of retroactivity that the Court demanded in *Dorsey*.

Congress's decision as to where to draw the line for a statute's retroactive effect will always yield results that seem arbitrary.  Here, the line that Congress drew was simply between defendants who had already been sentenced and those who had not.  Our role is not to redraw that line, even for a statute that is "remedial."  Thus, as in *Hughes*, "[n]either policy concerns, nor some general sense of the statute's overriding purpose, nor the spirit of the age, provides us with any lawful basis to do what [the defendant] asks us to do here."  733 F.3d at 647.

All that said, Carpenter's sentence was extreme by any measure.  His sentence was largely dictated by mandatory minimums, which means the judiciary was largely denied any role in determining it.  Carpenter's case therefore illustrates the importance of dividing government power among three branches: for if the power to determine his sentence had not been consolidated in only two—Congress and the executive—the sentence here would never have been imposed.

—————————

**DISSENT**

—————————

GRIFFIN, Circuit Judge, dissenting.

This appeal arises under the First Step Act, which amended several criminal statutes and reduced mandatory-minimum sentences for certain federal crimes. For defendant Timothy Carpenter, the Act, if applied, "would reduce his mandatory-minimum sentence on his [18 U.S.C.] § 924(c) convictions by 80 years (from 105 years to 25)." *United States v. Carpenter*, 2023 WL 3200321, at *1 (6th Cir. May 2, 2023). But despite the Act's retroactivity provision extending its benefits to defendants awaiting sentencing, and despite the vacatur of Carpenter's earlier, invalid, pre-Act sentence, the panel here—following circuit precedent—concluded Carpenter must now be resentenced under the old version of the statute with its outdated sentencing scheme. *Id.* at *2 (citing *United States v. Jackson*, 995 F.3d 522, 524–25 (6th Cir. 2021)). In my view, *Jackson* was wrongly decided, and this case involves a question of exceptional importance. Accordingly, I respectfully dissent from the denial of the petition for rehearing en banc.

I.

The default rule for sentencing statutes is that offenders are subject to the version that was in effect when the crime was committed. *See Dorsey v. United States*, 567 U.S. 260, 272–73 (2012). But the Act departed from that rule. Section 403(b) provides:

> APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.

First Step Act of 2018, Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5221–22.

This language raises the question of whether "a sentence" refers to a historical fact or one with legal effect—i.e., does it encompass a *prior, invalid sentence* or does it require an *existing, valid one*?

Under *Jackson*, whether the Act applies turns on a historical inquiry: was any sentence (even an illegal or unconstitutional one) imposed on the defendant on or before December 21, 2018? 995 F.3d at 524–25. If so, the defendant is to be resentenced under the old version of the statute, without the benefit of the Act's sentencing reforms. As Judge Moore thoughtfully explained, *Jackson* was wrongly decided—"[t]he plain language, structure, and purpose of First Step Act § 403 suggest" that the Act applies at resentencing where an earlier sentence was vacated. *Id.* at 526 (Moore, J., dissenting).

Beginning with the text, *Jackson* failed to account for the common-law meaning of "a sentence" and the effect of vacatur on "a sentence." When we interpret statutory language with common-law terms, we presume that Congress employs their common-law meaning. *United States v. Hansen*, 143 S. Ct. 1932, 1944 (2023) ("When Congress transplants a common-law term, the 'old soil' comes with it."); *see also Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 187 (2016); *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329 (1981). At common law, "a sentence" that was vacated was void "ab initio, as if it had never happened." *United States v. Mitchell*, 38 F.4th 382, 392–93 (3d Cir. 2022) (Bibas, J., concurring) (discussing historical treatment, modern precedent, and an immigration exception demonstrating this meaning); *see also Pepper v. United States*, 562 U.S. 476, 508 (2011) (Vacatur "wipe[s] the slate clean."); *Jordon v. Gilligan*, 500 F.2d 701, 710 (6th Cir. 1974) ("[A] void judgment is no judgment at all and is without legal effect."); *Mitchell v. Joseph*, 117 F.2d 253, 255 (7th Cir. 1941) (stating "the general rule is that where a court, in the discharge of its judicial functions, vacates an order previously entered, the legal status is the same as if the order had never existed" and collecting cases).

True, "we do not assume that a statutory word is used as a term of art where that meaning does not fit." *Johnson v. United States*, 559 U.S. 133, 139 (2010). But here, the "void from the start" meaning fits like a glove. If a pre-Act sentence is later vacated, then that sentence was void from the start, including on the date the Act was enacted. That meaning, in turn, comports with the Act's purpose—to reduce the harsh length of mandatory-minimum sentences for certain crimes for defendants awaiting sentencing for those crimes.

II.

Relying on then-Judge Barrett's dissent in *United States v. Uriarte*, the concurrence dismisses this common-law argument as a "technical" meaning that does not fit with the text's "ordinary meaning." Conc. at 3–5 (citing *Uriarte*, 975 F.3d 596, 606–609 (7th Cir. 2020) (en banc) (Barrett, J., dissenting)). But even the *Uriarte* dissent's grammar discussion leaves one unsure of how the statute's "ordinary meaning" results in a "historical fact" approach. *See id.*

To state the "historical fact" conclusion in a way that makes grammatical sense, one must use a verb tense different than the statute's—replacing "has" with "had." Conc. at 4 ("Carpenter's sentence *had* been imposed as of that date, and indeed had not even been vacated yet.") (emphasis added); *see Uriarte*, 975 F.3d at 610 ("[T]he applicability of the First Step Act turns on whether a sentence *had* been imposed on the defendant before the date of enactment.") (emphasis added).

But the statute uses the *present*-perfect tense (has), not the past-perfect one (had). The present-perfect tense "denotes an act, state, or *condition* that is now completed or *continues up to the present*." The Chicago Manual of Style ¶ 5.132 (17th ed. 2017) (emphases added). As particularly relevant here, our caselaw provides that one of the "multitude of definitions of 'imposed'" is one describing the *ongoing condition* of a sentence. *United States v. Henry*, 983 F.3d 214, 223 (6th Cir. 2020) ("When our court reviews a sentence on direct appeal, that sentence *remains 'imposed'* unless we vacate and remand for resentencing.") (emphasis added). With this understanding, Section 403(b) refers not to a district court's past action, but rather to a sentence's ongoing condition.

First, Congress wrote the statute in the passive voice—"a sentence" is the thing that "has been imposed." There is no mention of the district court.

Second, if the text were referring to an act that occurred at a specific time in the past (like when a district court "imposed" an invalid sentence at an earlier sentencing), then the correct verb tense would have been the past tense or even the past-perfect tense. The present-perfect tense "is distinguished from the past tense because it refers to (1) a time in the indefinite past {I have played golf there before} or (2) a past action [or state or condition] that comes up to

and touches the present {I have played cards for the last eighteen hours}." The Chicago Manual of Style ¶ 5.132 (17th ed. 2017) (emphases omitted). "The past tense, by contrast, indicates a more specific . . . time in the past." *Id.* The Act's use of the present-perfect tense indicates that it is *not* asking about an act at a specific time in the past, rather, it is concerned with a condition that "comes up to and touches the present." *Id.*

If a "sentence remains 'imposed'" until we vacate it, *Henry*, 983 F.3d at 223, then *has* Carpenter's sentence been imposed as of December 21, 2018? No. It *was* imposed as of that date. It *had been* imposed as of that date. But it *has not been* imposed as of that date. In my view, if there is an "ordinary meaning" to this language, it supports the Act's application here.

III.

All our sister circuits that have considered the meaning of "a sentence" in the Act have disagreed with *Jackson*—that term does not encompass a vacated sentence. *United States v. Mitchell*, 38 F.4th 382, 386–89 (3d Cir. 2022); *United States v. Merrell*, 37 F.4th 571, 575–76 (9th Cir. 2022); *United States v. Bethea*, 841 F. App'x 544, 549–51 (4th Cir. 2021) (analyzing an identical provision in § 401(c)); *see also United States v. Uriarte*, 975 F.3d 596, 601–06 (7th Cir. 2020) (en banc) (analyzing whether the Act applies to defendants whose sentences were vacated before December 21, 2018, but noting that vacatur renders a sentence "a nullity" and "wipe[s] the slate clean") (citation omitted). And in a rare show of agreement on a petition for rehearing en banc, the government agrees that *Jackson* was wrongly decided and supports Carpenter's petition.

Moreover, our interpretation of the statutory language at issue matters to more than just cases involving firearms in connection with crimes of violence, like Carpenter's. 18 U.S.C. § 924(c). The Act uses identical language in § 401(c), which applies the Act's benefits to offenders sentenced for certain drug offenses under 21 U.S.C. § 841. First Step Act of 2018, Pub. L. No. 115-391, § 401, 132 Stat. 5194, 5221. How we interpret this language will continue to matter for years to come, as defendants' pre-Act sentences or convictions are considered (and potentially vacated) on post-conviction review under 28 U.S.C. § 2255.

IV.

When "construing a statute, courts ought not deprive it of the obvious meaning intended by Congress, nor abandon common sense." *Uriarte*, 975 F.3d at 603 (citation omitted). We did so in *Jackson*, and today, we miss an opportunity to correct our error. For these reasons, and those set forth in Judge Moore's dissent in *Jackson*, I respectfully dissent from the denial of Carpenter's unopposed petition for rehearing en banc.

---

**DISSENT**

---

BLOOMEKATZ, Circuit Judge, dissenting from the denial of rehearing en banc.  My colleagues have set forth thoughtful analyses on the merits of the interpretive question that this case presents about the First Step Act's retroactivity provision.  I write separately to emphasize a predicate point—that this case has all the hallmarks of one that warrants the full court's consideration.  In *United States v. Jackson*, 995 F.3d 522 (6th Cir. 2021), we held that the Act's retroactivity provision did not cover a defendant who had been sentenced before the Act's effective date but whose sentence had been vacated after that date.  *Id.* at 524–25.  *Jackson*'s holding not only clashes with our own prior precedent, but also departs from every other circuit to have considered the issue.  And it does so on a question of exceptional importance, where both the federal government and the defendant seek en banc review.  We should have agreed.

Federal Rule of Appellate Procedure 35 provides that rehearing en banc "is not favored and ordinarily will not be ordered unless" either of two requirements are met: (1) "en banc consideration is necessary to secure or maintain uniformity of the court's decisions," or (2) "the proceeding involves a question of exceptional importance."  This case more than satisfies these requirements.

*First*, consider the uniformity requirement.  In my view, *Jackson* is irreconcilable with this Court's previous decision in *United States v. Henry*, 983 F.3d 214 (6th Cir. 2020).  *Henry* held that defendants whose sentences under 18 U.S.C. § 924(c) were vacated before the First Step Act's effective date should be sentenced under the Act's amended § 924(c) at resentencing.  Yet *Jackson* read the Act's retroactivity provision not to apply to anyone who had received "a sentence" as a matter of "historical fact" before the Act's effective date—even if the sentence was void.  Conc. at 3; *Jackson*, 995 F.3d at 524–25 ("[V]acatur does not erase Jackson's prior sentence from history.").  *Jackson* attempts to distinguish *Henry* by noting that Henry's sentence was vacated before the Act's effective date and Jackson's was vacated after.  *Id.* at 525.  If following *Jackson*, however, the critical question is whether "a" sentence had ever been imposed

as a historical matter, then *Henry* is in direct conflict. *Id.* at 527 (Moore, J., dissenting) (noting that the majority opinion "adopts a reading of the text that we rejected in *Henry*").

*Jackson* also splits from all our sister circuits to have reached the question. *See United States v. Mitchell*, 38 F.4th 382 (3d Cir. 2022); *United States v. Merrell*, 36 F.4th 571 (9th Cir. 2022); *United States v. Bethea*, 841 F. App'x 544 (4th Cir. 2021). This case, then, presents both an intra- and inter-circuit conflict, weighing in favor of en banc review.

*Second*, consider the myriad ways this issue is exceptionally important. The concurring and dissenting opinions have already identified several. Judge Kethledge opines that Carpenter's sentence, in absence of the First Step Act's application, "was extreme by any measure." Conc. at 6. And he earlier reflected that *Jackson*'s decision not to apply the Act could frustrate the basic federal sentencing requirement that sentences be "'sufficient, but not greater than necessary, to comply with' the purposes of sentencing." *United States v. Carpenter*, No. 22-1198, 2023 WL 3200321, at *2 (6th Cir. May 2, 2023) (quoting 18 U.S.C. § 3553(a)). As Judge Griffin likewise recognizes, *Jackson*'s interpretation "will continue to matter for years to come" and could also affect one of the Act's other retroactivity provisions, which uses identical language to govern the retroactive effect of amendments to certain drug offenses. Dissent at 10.

The real human costs that this esoteric legal issue presents also should not be overlooked. Because our circuit has split from every other to reach this issue, defendants in Kentucky, Michigan, Ohio, and Tennessee will often have to serve decades longer sentences than those in most of the other states. Carpenter proves this point. His sentence is *eighty* years longer than it would be if he had been resentenced in the seventeen states that comprise the Third, Fourth, and Ninth Circuits. *See* Dissent at 7. The resulting sentencing disparity, along with the other reasons I have outlined, should give us pause enough to consider the decision as a full court. Indeed, the circuit split, the federal government's position, the dissent from then-Judge Barrett in *Uriate*, and the dueling opinions on this en banc petition underscore that the scope of the retroactivity provision is far from clear. *See United States v. Uriate*, 975 F.3d 596, 606–09 (7th Cir. 2020) (en banc) (Barrett, J., dissenting).

This case is a textbook example of the rare case that deserves the full court's attention. I respectfully dissent from the denial of the petition.

ENTERED BY ORDER OF THE COURT

_____

Deborah S. Hunt, Clerk