# United States Court of Appeals for the Fifth Circuit

_____

No. 22-10265
_____

United States Court of Appeals
Fifth Circuit

**FILED**
February 2, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Corey Deyon Duffey; Jarvis Dupree Ross; Tony R. Hewitt,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:08-CR-167-1

_____

Before Southwick, Engelhardt, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

The primary issue in this appeal is whether § 403 of the First Step Act applies to post-enactment resentencings of defendants whose pre-enactment sentences were vacated after the law was enacted. It does not, so Appellants' § 403 claims lack merit. Further, Appellant Duffey's challenge to the application of a sentencing enhancement at his resentencing and Appellant Hewitt's challenge to his remaining § 924(c) convictions both fail. Accordingly, we affirm as to all issues.

No. 22-10265

## I.

Appellants Corey Deyon Duffey, Jarvis Dupree Ross, and Tony R. Hewitt were convicted in 2009 on numerous counts of conspiracy, attempted bank robbery, and bank robbery, as well as using a firearm in furtherance thereof, in violation of 18 U.S.C. § 924(c). *See United States v. Duffey*, 456 F. App'x 434, 438 & nn.1–4 (5th Cir. 2012). On direct appeal, this court reversed the convictions for the attempted robberies and the corresponding firearms charges, affirmed the other convictions, and remanded to the district court for resentencing. *Id.* at 444–45. Appellants were each resentenced in 2012. We affirmed these new sentences. *See United States v. Ross*, 582 F. App'x 528, 529–30 (5th Cir. 2014).

At the time we affirmed Appellants' new sentences, an initial violation of § 924(c) required a mandatory minimum sentence of five years. 18 U.S.C. § 924(c)(1)(A)(i) (effective 2012–2018). If a "second or subsequent" violation was committed, each such conviction was to result in a mandatory sentence of "not less than 25 years[.]" § 924(c)(1)(C)(i). Also at that time, the initial and subsequent convictions could be "stacked," such that a first, second, and any subsequent convictions could arise out of the same incident or conduct. *See Deal v. United States*, 508 U.S. 129, 132–33 (1993). Thus, when Appellants were convicted under § 924(c)(1)(A)(i) for using a firearm in connection with a conspiracy to commit bank robbery, they received five-year minimum sentences. Because they were also convicted for subsequent § 924(c) violations arising out of the same conduct—convictions that were stackable—Appellants each received 25-year mandatory minimum sentences for every additional § 924(c) conviction.

Appellants filed unsuccessful motions to vacate, set aside, or correct their sentences under 28 U.S.C. § 2255. *See United States v. Ross*, No. 3:15-CV-3233-B-BH, No. 3:08-CR-167-B-BH(3), 2017 WL 3328120, at *1 (N.D.

Tex. June 22, 2017), *adopting report and recommendation*, 2017 WL 3314195, at *1 (N.D. Tex. Aug. 3, 2017); *United States v. Duffey*, No. 3:15-CV-0500-B-BH, No. 3:08-CR-0167-B(1), 2017 WL 6989111, at *1 (N.D. Tex. Dec. 29, 2017), *adopting report and recommendation*, 2018 WL 461126, at *1 (N.D. Tex. Jan. 17, 2018); *United States v. Hewitt*, No. 3:16-CV-603-B-BH, No. 3:08-CR-167-B(2), 2018 WL 3853708, at *1 (N.D. Tex. July 15, 2018), *adopting report and recommendation*, 2018 WL 3845232, at *1 (N.D. Tex. Aug. 13, 2018).

In 2020, Appellants filed motions for authorization to file successive § 2255 motions in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), which held that conspiracy-predicated § 924(c) convictions do not qualify as "crimes of violence." Appellants argued that several of their convictions—and resulting 25-year mandatory minimum sentences—were unconstitutional because the predicate offense for the enhancement, *i.e.*, conspiracy to commit bank robbery, no longer qualified as a crime of violence under § 924(c)(3). We granted Appellants' motions.

Appellants then filed their successive habeas applications in the district court, which granted relief. The district court vacated Appellants' § 924(c) conspiracy convictions and accompanying sentences, vacated the sentences on all remaining convictions, and ordered resentencing.

Prior to Appellants' resentencing hearings, they each filed objections to their respective presentence reports (PSR), arguing, *inter alia*, that § 403 of the First Step Act of 2018 applied to their resentencing. Specifically, they argued they were subject only to the five-year mandatory minimum sentence set by § 924(c) under § 403, which eliminated sentence stacking.[1] The

---

[1] Section 403(a) of the First Step Act subjects defendants to only the five-year minimum sentence for multiple convictions arising out of the same conduct, when no other § 924(c) conviction has become "final." First Step Act of 2018, Pub. L. No. 115-391,

No. 22-10265

Government and the probation officer responded that § 403 did not apply because Appellants were serving valid sentences at the time that the First Step Act was enacted on December 21, 2018. The Government maintained this view during Duffey's and Ross's resentencings. However, the Government changed its position by the time of Hewitt's resentencing. Similarly, on appeal, the Government asserts that § 403 should apply across the board to Appellants' resentencings.

In addition to Appellants' § 403 arguments, Duffey and Hewitt each raised additional arguments at their 2022 resentencings that are at issue in this appeal. Duffey objected to the application of a two-level adjustment under U.S.S.G. § 2B3.1(b)(4)(B) for physical restraint of the victim, arguing that even though the bank manager was held at gunpoint, moved to the vault, and ordered to open it during one of the bank robberies, he was not physically restrained as defined in the Guidelines. Hewitt moved to dismiss his remaining § 924(c) convictions, arguing that the district court's vacatur of his § 924(c)(1)(A)(i) conviction required vacatur of *all* his § 924(c) convictions.

The district court overruled Appellants' objections—including Duffey's physical-restraint enhancement objection— and denied Hewitt's motion to dismiss. Appellants were then resentenced as follows: Duffey received 1,560 months imprisonment; Ross received 1,625 months imprisonment; and Hewitt received 1,625 months imprisonment. Appellants now challenge those sentences.

---

§ 403(a), 132 Stat. 5194, 5221. Section 403(b) provides that the Act "shall apply to any offense that was committed before the date of enactment of th[e] Act, if a sentence for the offense has not been imposed as of such date of enactment." *Id.* § 403(b), 132 Stat. 5194, 5222.

## II.

We review questions of statutory interpretation *de novo*. *United States v. Tilford*, 810 F.3d 370, 371 (5th Cir. 2016). We review the district court's interpretation and application of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v. Garcia*, 857 F.3d 708, 711–12 (5th Cir. 2017). On matters of jurisdiction, our review is *de novo*, using the same standard as the district court. *Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.*, 512 F.3d 742, 746 (5th Cir. 2008). Questions of law relating to a § 2255 application are also reviewed *de novo*, while factual findings are reviewed for clear error. *United States v. Wiese*, 896 F.3d 720, 723 n.3 (5th Cir. 2018).

## III.

We must first determine whether § 403(a) of the First Step Act applies to Appellants' latest resentencings. We conclude it does not.

"[W]e start where we always do: with the text of the statute." *Van Buren v. United States*, 141 S. Ct. 1648, 1654 (2021). Section 403(b) of the First Step Act states that § 403(a) "shall apply to any offense that was committed before the date of enactment of th[e] Act, if a sentence for the offense has not been imposed as of such date of enactment." In the mine run of pending cases, application of this language is straightforward. But does the First Step Act's reach encompass prior offenses for which a pre-Act sentence is later vacated? Can it be said that such a sentence "has not been imposed"?

These questions have "vexed[] and split[] our sister circuits." *United States v. Mitchell*, 38 F.4th 382, 386 (3d Cir. 2022). On one side of the split, the Third, Fourth, and Ninth Circuits have held that the First Step Act "requires [courts] to treat the vacated sentence as if it were never imposed[]" so that § 403(b) encompasses offenses involving the post-enactment vacatur of pre-enactment sentences. *United States v. Merrell*, 37

F.4th 571, 577–78 (9th Cir. 2022); *see also Mitchell*, 38 F.4th at 389; *United States v. Bethea*, 841 Fed. App'x 544, 550–51 (4th Cir. 2021).[2]  On the other side, the Sixth Circuit has held that § 403(b) does not apply when, notwithstanding post-enactment vacatur, "a sentence had been imposed" prior to the date of enactment.  *United States v. Jackson*, 995 F.3d 522, 525 (6th Cir. 2021); *see also United States v. Carpenter*, 80 F.4th 790, 791 (6th Cir. 2023) (Kethledge, J., joined by Sutton, C.J., Thapar, and Bush, JJ., concurring in the denial of rehearing en banc) ("[F]or purposes of precluding the Act's retroactivity as to the sentence for a particular conviction—the imposition of any sentence will do.  For § 403(b) simply asks whether, as of the Act's date of enactment (December 21, 2018), 'a' sentence has or 'has not been imposed[.]'") (citation omitted).  As explained below, we agree with the Sixth Circuit's interpretation of § 403(b) because it is the reading more faithful to the statute's text.

"When faced with questions of statutory construction, 'we must first determine whether the statutory text is plain and unambiguous' and, '[i]f it is, we must apply the statute according to its terms.'"  *Asadi v. G.E. Energy (USA) L.L.C.*, 720 F.3d 620, 622 (5th Cir. 2013) (quoting *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009)).  "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).  "If the statutory

---

[2] Additionally, the Seventh Circuit has held that § 403(b) applies to a convicted defendant whose sentence had been vacated prior to the enactment date but remained *unsentenced* on the enactment date.  *See United States v. Uriarte*, 975 F.3d 596, 601 (7th Cir. 2020) (en banc).  Notably, the Seventh Circuit appears to have left open the question of whether § 403(b) would apply to post-enactment vacaturs.  *See id.* at 605 (discussing "Congress's intent not to reopen *finished* proceedings because of the change in the law effected by the First Step Act") (emphasis in original).

text is unambiguous, our inquiry begins and ends with the text." *Id.* (quoting *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004)).

Appellant Hewitt and the Government both argue that § 403(b)'s reference to "a sentence" is "ambiguous as to whether it refers to the historical fact of the imposition of a sentence, regardless of its validity, or whether it refers to the imposition of a sentence with continuing validity." The thrust of their ambiguity argument stems from § 403(b)'s use of the present-perfect tense in the phrase "has not been imposed[.]" The Government maintains that this language "indicates that Congress was not focused on the single point in time of the pronouncement of the judgment, but rather on the sentence's continuing validity." We disagree.

As an initial matter, we have previously said that a sentence is "imposed" "when the district court pronounces it[.]" *United States v. Gomez*, 960 F.3d 173, 178 (5th Cir. 2020). Thus, the phrase "has not been imposed" suggests an act yet to be completed by the district court. *See Uriarte*, 975 F.3d at 606–07 (Barrett, J., dissenting). Put differently, whether a sentence has been "imposed" appears to hinge on a district court's action or inaction—not on a defendant's status. *See id.* at 607. Because of this, § 403(b)'s use of "imposed" puts the "focus on the historical fact" of a sentence's imposition. *Id.*

Couple this with § 403(b)'s delineation that the First Step Act applies to defendants for whom "a sentence . . . ha[d] not been imposed" as of the enactment date. Again, in the mine run of cases, the statute's application is easy: Criminal defendants who had not yet had a sentence imposed as of December 21, 2018, fall within the First Step Act's ambit. Defendants who already had a sentence imposed by then do not. Congress unambiguously drew the line for the First Step Act's application based on the date a sentence was imposed.

But in today's case, a question remains:  Does § 403(b)'s use of "a sentence" mean *any* sentence—including subsequently vacated ones—or, as the parties argue, does it mean only a sentence with continuing validity?  The answer is the former.

Section 403(b)'s text does not indicate that Congress intended for the First Step Act to apply only to a sentence with continuing validity.  The Government's argument to the contrary tracks with the Fourth and Seventh Circuits' reasoning:  "Had Congress intended the phrase 'a sentence' to convey a very broad meaning, it could have used the word 'any' as it did earlier in the same sentence[.]"  *Bethea*, 841 F. App'x at 549 (quoting *Uriarte*, 975 F.3d at 604 (majority opinion)).  But that gun kicks as hard as it shoots.  If Congress meant for the First Step Act's retroactivity bar to apply only to valid sentences, it could easily have said so.  Instead, § 403(b)'s use of "the indefinite article 'a' is broad enough to refer to any sentence that that has been imposed for the offense, even one that was subsequently vacated."  *Uriarte*, 975 F.3d at 608 (Barrett, J., dissenting).

True enough, Congress's use of "*a* sentence"—as opposed to "*any* sentence" or "a *valid* sentence"—could perhaps have been clearer.  But "[t]he mere observation that the statutory language could be made clearer does not make it unclear in the first place."  *Jackson*, 995 F.3d at 526.  Nor does it make it ambiguous.  Indeed, "[u]nambiguity does not require perfection . . . .  [W]e should not reject [§ 403(b)] just because it could be made even more clear."  *Bethea*, 841 F. App'x at 557 (Quattlebaum, J, dissenting).

The parties urge us—admittedly with support from our sister circuits—to focus on the impact of sentence vacatur when interpreting § 403(b). But vacatur has no effect on our interpretation. As the Sixth Circuit made clear in *Jackson*, "vacatur does not erase [Appellants']

prior sentence[s] from history." 995 F.3d at 525 (quoting *Vacate*, Black's Law Dictionary (11th ed. 2019)). "[E]liminating a sentence's prospective legal effect only 'wipe[s] the slate clean' looking forward." *Id.* (quoting *Pepper v. United States*, 562 U.S. 476 (2011)). Indeed, "vacatur wipes the slate clean insofar as the defendant will be sentenced anew," but it "does not require the district court to proceed as if the initial sentencing never happened." *Uriarte*, 975 F.3d at 608 (Barrett, J., dissenting) (citing *Pepper*, 562 U.S. at 507–08).[3] This makes good sense; otherwise, one who, as here, has been in prison for over a decade serving later-vacated sentences would nonetheless qualify as "a defendant on whom a sentence has not been imposed" as of the First Step Act's enactment date. *Carpenter*, 80 F.4th at 792 (Kethledge, J., concurring) (quoting *Merrell*, 37 F.4th at 578 (Boggs, J., dissenting)).

We find a helpful analogue in 18 U.S.C. § 3742(g) for how "a defendant's earlier sentencing" serves "as a temporal marker that identifies the substantive rules . . . that the district court must apply when [re-]sentencing a particular defendant." *Id.* That statute, which addresses "[s]entencing upon remand[,]" provides that a "district court to which a case is remanded . . . shall apply the guidelines . . . that were in effect *on the date of the previous sentencing* of the defendant prior to the appeal." § 3742(g) (emphasis added). As with § 403(b), § 3742(g)'s reference to the reality of a defendant's prior sentencing does not give the vacated sentence legal effect. *Carpenter*, 80 F.4th at 792 (Kethledge, J., concurring). But it pegs the rules that apply to a resentencing on remand to the historical fact of the prior sentence. Section 403(b) does the same thing. To construe it differently, a district court would be forced paradoxically to "recognize the fact of the

---

[3] In any event, even if this "'clean slate' principle were sound, a background principle cannot overcome statutory text." *Id.* at 609.

defendant's prior sentence for purposes of determining his guidelines range . . . but at the same time pretend that sentence never happened for purposes of determining the defendant's mandatory minimum." *Id.* We do not read § 403(b)'s text to create such incongruity.

To summarize, we read § 403(b) as drawing the line for § 403(a)'s application at the date on which a sentence—whether later-vacated or with ongoing validity—was imposed. We do not discern ambiguity in § 403(b)'s language.[4] *Cf. Gomez*, 960 F.3d at 177 ("The Act itself plainly states that § 403 is not retroactive: It applies to an offense committed before its December 21, 2018 effective date only 'if a sentence for the offense ha[d] not been imposed as of such date.'"); *see also United States v. Smith*, 967 F.3d 1196, 1212 (11th Cir. 2020) ("There is no ambiguity in § 403(b). It plainly draws a line based on the Act's enactment date and provides that whether the amendments in § 403(a) apply to a case depends on which side of that line the imposition of the sentence falls.").[5] Our analysis thus "begins and ends with the text." *Asadi*, 720 F.3d at 622 (citation omitted). Applying that text, because sentences for Appellants' offenses had been imposed upon them prior to the First Step's Act's December 21, 2018 enactment date—even though those sentences were later vacated in 2020—§ 403(a) of the First Step Act does not apply, as the district court correctly held.

---

[4] Because we hold that § 403(b) is unambiguous, we reject Duffey and Ross's arguments that the rule of lenity requires us to read § 403(b) in the light most favorable to them. *See Shular v. United States*, 140 S.Ct. 779, 787 (2020) ("The rule [of lenity] 'applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute.'") (quoting *United States v. Shabani*, 513 U.S. 10, 17 (1994)).

[5] *Gomez* and *Smith* both interpreted § 403(b) in the context of sentences that had been imposed by the district court prior to the First Step Act's enactment date but remained pending on direct appeal as of that date. However, the point remains: Those cases agreed that § 403(b)'s language is clear and unambiguous.

No. 22-10265

## IV.

Duffey also challenges his latest resentencing, in which the district court applied a two-level enhancement under U.S.S.G. § 2B3.1(b)(4)(B) for the physical restraint of a victim during a robbery. In 2008, Duffey and his cohorts robbed a series of banks throughout the Dallas-Fort Worth Metroplex. During these robberies, each bank's manager "was held at gunpoint and moved to the vault and told to open the vault." Because of this, the district court applied the enhancement to Duffey's sentence for the physical restraint of the branch managers.

## A.

Before we address the merits of Duffey's argument, we must first ensure that we have appellate jurisdiction over this issue. *United States v. Hanner*, 32 F.4th 430, 434 (5th Cir. 2022) (quoting *Castaneda v. Falcon*, 166 F.3d 799, 801 (5th Cir. 1999) ("We must always be sure of our appellate jurisdiction and, if there is doubt, we must address it, sua sponte if necessary.")). Citing *Hanner*, the Government suggests we lack jurisdiction because "Duffey's successive Section 2255 motion . . . w[as] limited to . . . Duffey's Section 924(c) convictions premised on conspiracy to commit bank robbery[.]" This is so, the Government proposes, because Duffey's physical-restraint enhancement argument falls outside the scope of our underlying 2021 grant of leave to file the § 2255 motion at issue here.

In *Hanner*, the defendant challenged whether his manslaughter conviction—entirely separate from those encompassed in the grant of his application to file a successive habeas application—qualified as an Armed Career Criminal Act predicate after a change in the law. *Id.* Because "Hanner neither sought nor obtained permission to file a successive § 2255 motion raising [that] claim[,]" the district court lacked jurisdiction to

consider the issue, and Hanner's appeal was dismissed to the extent that issue was raised. *Id.*

Duffey's challenge to the two-level Guidelines enhancement diverges substantially from *Hanner*. His motion to file a successive habeas application was cabined to whether "he was convicted and sentenced under § 924(c)(1) based on a predicate offense that is not a 'crime of violence.'" But the district court eventually vacated Duffey's conspiracy-based § 924(c) convictions and sentences, leading to vacatur of his other sentences as well. Therefore, Duffey does not raise a separate conviction, as in *Hanner*. Instead, he questions imposition of the physical-restraint enhancement to his new sentences growing out of his latest habeas petition. We have previously rejected, albeit in a different procedural posture, a jurisdictional challenge to a district court's consideration of sentencing enhancements on resentencing after a successful § 2255 challenge to a § 924(c) conviction. *See United States v. Benbrook*, 119 F.3d 338, 339–40 (5th Cir. 1997); *see also United States v. Robinson*, 769 F. App'x 140, 141 (5th Cir. 2019) (reviewing a challenge to sentencing enhancement applied at resentencing following a successful successive § 2255 motion). The same result obtains here, and we have jurisdiction to consider Duffey's claim.

## B.

Turning to the merits, we agree with the Government that the district court properly applied the physical-restraint enhancement. Section 2B3.1(b)(4)(B) imposes a two-level enhancement "if any person was physically restrained to facilitate commission of the offense or to facilitate escape." The Guideline commentary defines "physically restrained" as "the forcible restraint of the victim such as by being tied, bound, or locked up." *Garcia*, 857 F.3d at 712 (quoting U.S.S.G. §§ 1B1.1 cmt. n.1(K), 2B3.1 cmt. n.1). "By the use of the words 'such as,' it is apparent that 'being tied,

bound, [and] locked up' are listed by way of example rather than limitation." *Id.* (citation omitted). Thus, "it is possible for a district court to conclude that a defendant physically restrained his victims without evidence that he actually tied, bound, or locked them up." *Id.* (citation omitted).

Duffey relies primarily on *Garcia* to support his position. There, during an armed robbery, a defendant held a gun to an employee's head and demanded that he get down on the floor. *Id.* at 710. Based on this conduct, the district court approved the two-level physical-restraint enhancement. On appeal, however, we held that though there was "little doubt that at least one of the employees felt restrained[,]" the robbery victims "were not subjected to the type of *physical* restraint that victims experience when they are tied, bound, or locked up." *Id.* at 713; *see also* U.S.S.G. §§ 1B1.1 cmt. N.1(K), 2B3.1 cmt. N.1. We reasoned that because the situation in *Garcia* was no different than "what would normally occur during an armed robbery[,]" the physical-restraint enhancement did not apply. *Id.* at 713–14.

Duffey contends that *Garcia* encapsulates his situation, so the enhancement should not apply in his case, either. But *Garcia* is distinguishable. In *Garcia*, we noted that courts had previously found the physical-restraint enhancement appropriate "where defendants force their victims to move into confined spaces at gunpoint and instruct the victims not to leave." *Id.* at 712 (collecting cases). The panel stressed that *Garcia* was not such a case because "the defendants allowed the employees to remain where they were and never forced them to move to a confined space." *Id.* Duffey's case is more akin to *United States v. Frank*, 223 F. App'x 412 (5th Cir. 2007). There, we found the physical-restraint enhancement applicable because the defendants "escorted a security guard and several casino employees to the casino manager's office at gunpoint and instructed them not to leave." *Frank*, 223 F. App'x at 413.

As in *Frank*, in the string of bank robberies in which Duffey was involved, Duffey and his partners in crime did more than "simply stand[] near a door, hold[] a firearm, and instruct[] a victim to get on the ground[.]" *Garcia*, 857 F.3d at 713. The district court's findings, adopted from Duffey's PSR, show that in each robbery, the banks' managers "w[ere] held at gunpoint and moved to the vault and told to open the vault." At Duffey's March 2022 resentencing hearing, the district court noted that Duffey and his cohorts "robbed . . . bank[s] in a takeover fashion[,]" and, in at least one of these robberies, pointed a gun at a bank manager's head and forced the manager to the vault area to open it, such that there were "more than enough facts to support restraint." The district court's findings are plausible in light of the record as a whole. *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011) (citations omitted). The district court therefore did not clearly err, and it follows that the court did not abuse its discretion in applying the § 2B3.1(b)(4)(B) enhancement in Duffey's 2022 resentencing.

## V.

We turn finally to whether the district court erred in determining that it did not have jurisdiction to vacate Hewitt's remaining § 924(c) convictions. We affirm the district court on this point as well.

Before his 2022 resentencing, Hewitt moved to dismiss his convictions predicated on substantive bank robbery. Hewitt argued that because his initial convictions based on § 924(c) were vacated as part of his successful § 2255 application, his subsequent convictions must also be dismissed given that they were premised on previously vacated counts. The district court denied Hewitt's motion for lack of jurisdiction, reasoning that Hewitt was required to seek leave in this court to file a new § 2255 application raising this claim. On appeal, Hewitt argues that another § 2255 application is unnecessary. We disagree.

When determining whether the district court has jurisdiction to decide the merits of a successive § 2255 application, we require that the defendant pass two "gates." *Wiese*, 896 F.3d at 723. At the first gate, the defendant must make a "prima facie showing" in this court that his claims result from either "(1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable, or (2) newly discovered, clear and convincing evidence that but for the error no reasonable fact finder would have found the defendant guilty." *Id.* (quotation marks and citation omitted). At the second gate, the defendant must "actually prove at the district court level that the relief he seeks relies either on a new, retroactive rule of constitutional law or on new evidence." *Id.* Hewitt passed through neither gate on the point he now seeks to raise.

We granted Hewitt's motion to file a successive § 2255 application regarding whether "his 18 U.S.C. § 924(c) convictions that were predicated on his convictions for *conspiracy to commit bank robbery* should be vacated." Several of Hewitt's convictions were predicated on conspiracy and were in fact vacated. But his remaining five § 924(c) convictions were based on the *substantive* crime of bank robbery. These remaining § 924(c) convictions fall outside of our authorization for Hewitt's instant § 2255 motion. Thus, the district court held—correctly—that it lacked jurisdiction to reach those convictions. *See Hanner*, 32 F.4th at 434–35.

\*　　\*　　\*

Based on the foregoing, as to all issues presented, the district court is

AFFIRMED.